NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.   A-3274-10T3
             A-3868-10T3
             A-3916-10T3
             A-4086-10T3

TEAMSTERS LOCAL 97, affiliated
with the INTERNATIONAL BROTHERHOOD
OF TEAMSTERS, and PROFESSIONAL
FIREFIGHTERS ASSOCIATION OF NEW
JERSEY, I.A.F.F., AFL-CIO,

        Plaintiffs-Appellants,

v.

STATE OF NEW JERSEY, CHRISTOPHER J.
CHRISTIE, as Governor of the State
of New Jersey, THE NEW JERSEY SENATE
AND ITS MEMBERS, STEPHEN M. SWEENEY,
as its President and as a Representative
of the Individual Members of the New
Jersey Senate, THE NEW JERSEY GENERAL
ASSEMBLY AND ITS MEMBERS, SHEILA Y.
OLIVER, as its Speaker and as a
Representative of the Individual
Members of the New Jersey General
Assembly, and ANDREW P. SIDAMON-ERISTOFF,
Treasurer of the State of New Jersey,

        Defendants-Respondents.

_____

NEW JERSEY STATE FIREFIGHTERS'
MUTUAL BENEVOLENT ASSOCIATION,
NEW JERSEY STATE POLICEMAN'S
BENEVOLENT ASSOCIATION, GLOUCESTER
CITY FMBA LOCAL NO. 51, NORTH
WILDWOOD FMBA LOCAL NO. 56, TRENTON
FMBA LOCAL NO. 6, KEARNY FMBA LOCAL
NO. 18, NEW BRUNSWICK FMBA LOCAL
NO. 17, BELLEVILLE FMBA LOCAL NOS.

+------------------------------------+
|     **APPROVED FOR PUBLICATION**   |
|                                    |
|         **January 31, 2014**       |
|                                    |
|        **APPELLATE DIVISION**      |
+------------------------------------+

29 AND 229, SPRINGFIELD FMBA LOCAL
57, SPRINGFIELD FMBA LOCAL 57A,
SOUTH ORANGE PBA LOCAL NO. 12, NEPTUNE
PBA LOCAL NO. 74, ESSEX COUNTY SHERIFF'S
OFFICERS PBA LOCAL NO. 183, KEYPORT PBA
LOCAL NO. 223, PASSAIC COUNTY SHERIFF'S
OFFICERS PBA LOCAL NO. 286, RUTHERFORD PBA
LOCAL NO. 300, PATERSON PBA LOCAL NO. 1 and
SUPERIOR OFFICERS ASS'N WILLIAM LAVIN, ROBERT
BROWER, and ANTHONY F. WEINERS,

     Plaintiffs-Appellants,

v.

STATE OF NEW JERSEY, NEW JERSEY
DEPARTMENT OF THE TREASURY, NEW JERSEY
STATE HEALTH BENEFITS COMMISSION,
ANDREW P. SIDAMON-ERISTOFF, TREASURER,
STATE OF NEW JERSEY, individually and
officially, NEW JERSEY STATE SENATE,
as a body politic of the State of New
Jersey, and NEW JERSEY STATE GENERAL
ASSEMBLY, as a body politic of the
State of New Jersey,

     Defendants-Respondents.

_____

NEW JERSEY EDUCATION ASSOCIATION,

     Plaintiff-Appellant,

v.

STATE OF NEW JERSEY, CHRISTOPHER J. CHRISTIE,
as Governor of the State of New Jersey, NEW
JERSEY DEPARTMENT OF THE TREASURY, ANDREW P.
SIDAMON-ERISTOFF, TREASURER, STATE OF NEW
JERSEY, individually and officially,
NEW JERSEY STATE HEALTH BENEFITS COMMISSION,
NEW JERSEY SCHOOL EMPLOYEES HEALTH BENEFITS
COMMISSION, NEW JERSEY STATE SENATE, as a
body politic of the State of New Jersey,
STEPHEN M. SWEENEY, as President and as a
Representative of the Members of the New
Jersey State Senate, NEW JERSEY STATE GENERAL

2

ASSEMBLY, as a body politic of the State of
New Jersey, SHEILA Y. OLIVER, as its Speaker
and Representative of the Members of the
New Jersey General Assembly,

    Defendants-Respondents.

_____

NEW JERSEY FRATERNAL ORDER OF POLICE,

    Plaintiff,

v.

STATE OF NEW JERSEY, NEW JERSEY DEPARTMENT
OF THE TREASURY, NEW JERSEY STATE HEALTH
BENEFITS COMMISSION, ANDREW P. SIDAMON-ERISTOFF,
TREASURER, STATE OF NEW JERSEY, individually and
officially, NEW JERSEY STATE SENATE, as a body
politic of the State of New Jersey, NEW JERSEY
STATE GENERAL ASSEMBLY, as a body politic of
the State of New Jersey,

    Defendants.

_____

KEARNY FIREMEN'S MUTUAL BENEVOLENT
ASSOCIATION, LOCAL NO. 18,

    Plaintiff,

v.

TOWN OF KEARNY,

    Defendant.

_____

BELLEVILLE FIREMEN'S MUTUAL BENEVOLENT
ASSOCIATION, LOCAL NOS. 29 & 229,

    Plaintiffs,

v.

TOWNSHIP OF BELLEVILLE,

    Defendant.

_____

Argued February 27, 2013 – Decided January 31, 2014

Before Judges Sapp-Peterson, Nugent and Haas.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket Nos. L-1004-10, C-31-10, C-32-10, L-1291-10, L-2287-10, and L-2312-10.

James M. Mets argued the cause for appellants Teamsters Local 97 and Professional Firefighters Association of New Jersey (Mets Schiro & McGovern, LLP, attorneys; Mr. Mets, of counsel and on the brief; Brian J. Manetta, on the brief).

David I. Fox argued the cause for appellants New Jersey State Firefighters' Mutual Benevolent Association, its locals and members (Fox and Fox, LLP, attorneys; Mr. Fox, Craig S. Gumpel, and Jessica S. Swenson, of counsel and on the brief).

Paul L. Kleinbaum argued the cause for appellants New Jersey State Policemen's Benevolent Association (Zazzali Fagella Nowak Kleinbaum & Friedman, attorneys; Mr. Kleinbaum, of counsel and on the brief; Edward M. Suarez, Jr., on the brief).

Richard A. Friedman argued the cause for appellant New Jersey Education Association (Zazzali Fagella Nowak Kleinbaum & Friedman, attorneys; Mr. Friedman, of counsel and on the brief; Edward M. Suarez, Jr., on the brief).

Jean P. Reilly, Deputy Attorney General, argued the cause for respondents State of New Jersey, Governor Christopher J. Christie, and Treasurer Andrew P. Sidamon-Eristoff (Jeffrey S. Chiesa, Attorney

General, attorney; Robert T. Lougy, Assistant Attorney General, of counsel; Natalia T. Chan, Deputy Attorney General, on the brief).

Leon J. Sokol argued the cause for respondents New Jersey Senate, General Assembly, Stephen M. Sweeney, and Sheila Y. Oliver (Sokol, Behot & Fiorenzo, attorneys; Mr. Sokol, of counsel; Steven Siegel, on the brief).

This opinion of the court was delivered by

NUGENT, J.A.D.

The issues in these consolidated appeals involve public employees of the State, its political subdivisions, and their agencies. As compensation for their services, many public employees receive, among other benefits, health care insurance and pensions. To the extent the employees are required to contribute toward their benefits, their disposable income is reduced. Yet, the money that funds employee benefits is not unlimited. The State's officials are charged with the profound responsibility not only of ensuring that the health care and pension systems remain fiscally sound, but also that the State remains fiscally strong and that the burden on the State's taxpayers does not become intolerable. The interests of public employees and their representatives sometimes clash with the obligations of State government. Such is the case in this appeal.

Plaintiffs, who represent state and local public employees in collective negotiations with public employers, challenge the constitutionality of three laws:  L. 2010, c. 1 (Chapter 1), which made changes to State-administered retirement systems; L. 2010, c. 2 (Chapter 2), which made changes to eligibility requirements for and benefits provided through the State Health Benefits Program (SHBP) and School Employees' Health Benefits Program (SEHBP); and L. 2010, c. 3 (Chapter 3), which made changes to other public employee benefits.  The trial court dismissed plaintiffs' consolidated complaints for failure to state a claim.

In these consolidated appeals, plaintiffs argue that the trial court misapplied the standard for evaluating a motion to dismiss a complaint under Rule 4:6-2(e) for failure to state a claim upon which relief can be granted.  Plaintiffs also argue that the trial court erred when it concluded that Chapters 1, 2, and 3 did not violate either the State or Federal Constitution. Having considered plaintiffs' arguments in light of the record and controlling law, we conclude that the trial court properly construed and applied Rule 4:6-2(e) when it dismissed plaintiffs' complaints.  We further conclude that plaintiffs have not carried their heavy burden of demonstrating that the laws are unconstitutional.  Accordingly, we affirm.

A-3274-10T3

The plaintiffs in these consolidated appeals are Teamsters Local 97 (Teamsters); the Professional Firefighters Association of New Jersey (PFANJ); the New Jersey State Firefighters' Mutual Benevolent Association (FMBA) and affiliated locals; the New Jersey State Policeman's Benevolent Association (PBA) and affiliated locals; and the New Jersey Education Association (NJEA). New Jersey Fraternal Order of Police, Kearny Firemen's Mutual Benevolent Association, and Belleville Firemen's Mutual Benevolent Association Local Nos. 29 and 229, parties to the actions that were consolidated in the trial court, have not filed separate appeals. Defendants are the State of New Jersey, Governor Christopher J. Christie, the New Jersey Department of the Treasury and State Treasurer Andrew P. Sidamon-Eristoff, the State Health Benefits Commission (SHBC), and the School Employees Health Benefits Commission (SEHBC) (collectively, the Executive Defendants); the State Senate and its President, Stephen M. Sweeney, and the State General Assembly and its Speaker, Sheila Y. Oliver (collectively, the Legislative Defendants).

Plaintiffs seek to have Chapters 1, 2, and 3 declared void as unconstitutional. Because courts assessing constitutional challenges to state legislation must consider, among other factors, the governmental interests furthered by the

legislation, we begin our analysis with the legislative history of Chapters 1, 2, and 3.  We also review the legislative history of <u>L.</u> 2011, <u>c.</u> 78, which has superseded certain sections of Chapter 2.

On February 8, 2010, the Legislature introduced Senate Bill Numbers 2, 3, and 4.  S. 2, 214th Leg. (N.J. 2010); S. 3, 214th Leg. (N.J. 2010); S. 4, 214th Leg. (N.J. 2010).  The legislation was "designed to improve the fiscal strength of State and local governments, reduce taxpayer burdens, and ensure the health and pension systems remain viable for current and future employees." <u>Commc'ns Workers of Am. v. State of N.J., Dept. of Treasury</u>, 421 <u>N.J. Super.</u> 75, 83 (Law Div. 2011).

The three Senate bills implemented some of the recommendations of a Special Session Joint Legislative Committee on Public Employee Benefits Reform (Special Joint Committee), while leaving other recommendations to collective negotiations. <u>See</u> Special Session Joint Legislative Comm. on Pub. Emp. Benefits Reform, Final Report (2006), <u>available at</u> http:// www.njleg.state.nj.us/propertyTaxSession/JCPE_final_report.pdf. The Special Joint Committee was created pursuant to a Concurrent Resolution that declared "[t]his State's high property taxes are a matter of great concern to the people of New Jersey."  Assemb. Con. Res. 3, 212th Leg. (N.J. 2006).  The resolution created four legislative committees, including one on public employee

benefits, tasked with developing proposals to reduce property taxes.  N.J. Ass'n of Sch. Adm'rs v. Schundler, 211 N.J. 535, 540 (2012).  The Special Joint Committee was specifically "charged with identifying proposals that will terminate abuses of the pension systems and control the cost of providing public employee retirement health care and other benefits."  Final Report, supra, at 1.

In its final report, the Special Joint Committee found that New Jersey's retirement systems had an $18 billion unfunded liability.  Ibid.  SHBP expenditures, which then totaled $3.6 billion annually, had risen by over 150% in the previous five years and were expected to double by 2010.  Ibid.  "State and local governments will soon have to recognize the long-term implications of these employee health care benefits on their financial statements . . . ."  Ibid.  The Special Joint Committee found that for the benefit of taxpayers, public employees, retirees, and employers, measures to ensure the fiscal stability of the retirement system, and measures to control health care costs, needed to be implemented.  Id. at 2.

The Special Joint Committee recommended forty-one reforms to public employee pensions, health care benefits, and other employee benefits.  Id. at 2-5.  The recommendations identified "long term savings through wide-ranging reforms while maintaining the essential components of a competitive system of

pensions and benefits[.]" Id. at 2. With regard to health care costs, the Special Joint Committee's investigation of

> health benefits issues revealed a system plagued by the skyrocketing costs of health care that have dramatically increased the cost of health benefits for both current and retired public employees. The investigation also found that New Jersey public employees contribute less toward their health benefit costs than public employees of other states. The Joint Committee recommends that all employees share in the cost of their health benefits at some level and that local governments be accorded increased flexibility when negotiating cost sharing with local employees.
>
> [Id. at 57.]

The Special Joint Committee suggested, under Recommendations 22 and 23, that the Legislature require all active public employees and future retirees "to pay some portion of the cost of health care insurance premiums," id. at 4, but deferred

> to the various public employers and employee representatives to determine the appropriate level of premium sharing through collective bargaining.
>
> . . . The Benefits Review Task Force suggested that employees carry a share of 5% to 10%. In order to recognize differences in ability to pay and to provide appropriate flexibility in negotiations, this could be achieved by mandating a certain overall percentage employee share, with the distribution of that share among income groups to be subject to collective bargaining.
>
> [Id. at 115.]

A-3274-10T3

Recommendation 25 suggested that the Legislature "[r]equire that SHBP benefits changes negotiated by State be applied to local governments."[1]  Id. at 4.  The Special Joint Committee

> recommend[ed] that legislation be enacted to ensure that basic changes made in the provisions of SHBP benefits to State employees, such as the amount of copayments for office visits and prescription drugs, be applicable at the same time to all individuals covered by SHBP.
>
> The Joint Committee believes that it is important that SHBP benefits changes negotiated by the State with its employees be applicable to employees of local employers not only to reduce administrative expenses for all through conformity but also to extend to those local employers the same cost savings enjoyed by the State.  The . . . Committee believes that it is important to ensure consistency in health benefit coverage and cost for all public employees.
>
> [Id. at 121-22.]

With regard to other benefits, Recommendation 36 suggested that the Legislature "[l]imit sick leave compensation payable upon retirement to $15,000," and Recommendation 37 suggested a limitation on the accumulation of vacation leave.  Id. at 5.

On March 22, 2010, Senate Bill Numbers 2, 3, and 4 were signed into law (Chapters 1, 2, and 3).  They became effective on May 21, 2010.  Chapter 1 made reforms to pension systems,

---

[1] SHBP is a multiple-option program that offers health benefits coverage through a variety of plans and managed care programs. Final Report, supra, at 121.

Chapter 2 made reforms to health benefits programs, and Chapter 3 made reforms to payments for employee benefits, including accumulated sick leave and vacation time.

The following sections of Chapters 1, 2, and 3 are central to this appeal. Chapter 1, Section 22 (codified at N.J.S.A. 43:16A-1) changed the definition of "final compensation" used in calculating retirement benefits for persons who became members of the Police and Fireman's Retirement System (PFRS) after the law's effective date. Instead of defining "final compensation" for such new members as compensation received in the last twelve months of creditable service — the definition for members as of the effective date — the law changed the meaning of "final compensation" for such new members to "the average annual compensation for service for which contributions are made during any three fiscal years of membership providing the largest possible benefit to the member or the member's beneficiary." The Department of the Treasury estimated that Chapter 1 would reduce the required contribution to the State-administered retirement systems for State and local employers "by $13.2 million in State FY 2013, $25.3 million in FY 2014 and $40.9 million in FY 2015." Fiscal Note to S. 2 (June 3, 2010). FMBA is the only plaintiff who has argued on appeal that those provisions of Chapter 1 are unconstitutional, though other plaintiffs have joined in FMBA's argument.

Chapter 2 made changes to the SHBP, as well as to the SEHBP, concerning eligibility, cost sharing, choice of plan, application of benefit changes, waiver of coverage, and multiple coverage. Section 1 (codified in relevant part at N.J.S.A. 52:14-17.28b(c)(2)) required participating SHBP employees to contribute toward the cost of health benefits coverage:

> Commencing on the effective date of P.L.2010, c. 2 and upon the expiration of any applicable binding collective negotiations agreement in force on that effective date, the amount of the contribution required pursuant to paragraph (1) of this subsection by State employees and employees of an independent State authority, board, commission, corporation, agency, or organization for whom there is a majority representative for collective negotiations purposes shall be 1.5% of base salary, notwithstanding any other amount that may be required additionally pursuant to this paragraph by means of a binding collective negotiations agreement.

Section 1 (codified in relevant part at N.J.S.A. 52:14-17.28b(d)) also required retirees to contribute an amount equal to "1.5% of the retiree's monthly retirement allowance," if the retirees became "a member of a State or locally-administered retirement system on or after the effective date of P.L.2010, c. 2[.]" Section 6 (codified in relevant part at N.J.S.A. 52:14-17.46.9(b)) required the same contribution of SEHBP employees, "[c]ommencing on the effective date of P.L.2010, c. 2 and upon

A-3274-10T3

the expiration of any applicable binding collective negotiations agreement in force on that effective date[.]"

The State Department of the Treasury, Division of Pensions and Benefits (DPB) estimated that contributions by active and retired public employees (the 1.5% contribution) under Chapter 2 toward the cost of health care benefits would "result in a savings to those entities and boards of $314 million in State Fiscal Year 2011, $324 million in Fiscal Year 2012, and $333 million in Fiscal Year 2013." Fiscal Note to S. 3 (March 1, 2010).

Chapter 2, Section 8 (amending N.J.S.A. 52:14-17.36(b)) (the Section 8 Applicability Provision), made those changes in health care benefits included in collective negotiations agreements between the State and its employees applicable to other public employers and employees:

> All changes in the provision of health care benefits through the program that are included in collective negotiations agreements between the State and its employees entered into on or after the effective date of P.L.2010, c. 2 shall be made applicable by the commission to participating employers and their employees at the same time and in the same manner as to State employees. This subsection shall be applicable to the [SHBP] . . . and to the [SEHBP] . . . to the extent not inconsistent with the provisions of . . . P.L.2007, c. 103 (C.52:14-17.46.1 et seq.).

Chapter 2, Section 11 (amending <u>N.J.S.A.</u> 52:14-17.31a(c)), provides that in consideration for a waiver of health insurance, an employer may pay to the employee an amount not to exceed 25% of the cost saved by the employer, or $5000, whichever is less.

To aid public employers in interpreting Chapter 2, the DPB issued a document entitled "Frequently Asked Questions Regarding Chapter 2, <u>P.L.</u>2010 and Changes to Public Employee Health Benefits" (DPB's FAQs). The questions and answers included the following:

> 2.  Q.  Is the 1.5% of base pay contribution in addition to previously negotiated premium contributions?
>
> A.   No.   The 1.5% contribution is intended to be a floor, or minimum, contribution that an employee will make toward medical and/or prescription drug plan coverage. If another contribution arrangement has been negotiated, the higher of the two will prevail. All employees must contribute an amount equivalent to at least 1.5% of the employee's base pay. . . .
>
> . . . .
>
> 4.  Q.  On what salary is the calculation of the 1.5% contribution based?
>
> A.   The calculation is based on the employee's base contractual salary. In most instances, that means the salary on which pension contributions are based. However, for employees hired after July of 2007 for whom pensionable salary is limited to the salary on which Social Security contributions are based, the employee's total base salary would be used. As an employee receives salary increases during

A-3274-10T3

the year, the amount of contribution would need to be adjusted accordingly.

. . . .

6. Q. Our union contract expired last year and has not been settled. Will these employees be required to contribute the 1.5% contribution after May 21st [2010]?

A. If the contract is not ratified by May 21st, those employees will be required to pay the 1.5% contribution for health coverage. If the contract is ratified before May 21st, those employees will not be required to pay the 1.5% contribution until the expiration of the contract.

. . . .

10. Q. Will non-SHBP/SEHBP participating employers be required to follow the 1.5% minimum contribution?

A. Yes. Chapter 2 stipulates that employees of non-participating employers must pay a minimum of 1.5% of annual base salary as a health benefits contribution.

. . . .

17. Q. Will employees who waive coverage still have to pay 1.5% towards health benefit costs as all local employees and then receive waiver incentive based on the reduced employer cost?

A. No. An employee who waives coverage is not required to pay the 1.5% contribution.

On May 18, 2010, the Department of Community Affairs, Division of Local Government Services (DLGS), issued Local Finance Notice 2010-12 (LFN 2010-12), based on the materials

16

issued by the DPB, which also provided guidance for complying with Chapter 2 for both SHBP and non-SHBP local units, and included answers to "Frequently Asked Questions."

Plaintiffs assert that the foregoing provisions of Chapter 2, particularly those that require the 1.5% contribution and those that bind local employees to changes in health care benefits negotiated by State employees, violate various rights guaranteed by the State and Federal Constitutions.

Chapter 3 made

> various changes concerning payments to public employees for unused sick leave, sick leave for injury while in State service, and accidental and ordinary disability retirement for members of the Public Employees' Retirement System (PERS) and the Teachers Pension and Annuity Fund (TPAF). The bill also limits to one year the amount of vacation leave that certain local government and school district officers and employees would be permitted to carry forward, under most circumstances.
>
> [S. State Gov't Wagering, Tourism & Historical Preservation Comm., Statement to S. 4 (Feb. 18, 2010).]

FMBA challenges as unconstitutional the provisions of Chapter 3, Sections 1 and 2 (codified at N.J.S.A. 11A:6-19.2 and N.J.S.A. 40A:9-10.4), that prohibit the State's political subdivisions, agencies, and authorities from paying supplemental compensation to officers or employees for accumulated unused sick leave in an amount in excess of $15,000. FMBA also

challenges the provisions of Section 4 (codified at N.J.S.A. 40A:9-10.5) that prohibit officers and employees "of a political subdivision of the State, or an agency, authority, or instrumentality thereof, that has not adopted the provisions of Title 11A of the New Jersey statutes," from carrying over accrued vacation leave beyond the next succeeding year.

On June 28, 2011, after the trial court dismissed plaintiffs' complaints, the Legislature enacted the Pension and Health Care Benefits Act, L. 2011, c. 78 (Chapter 78) (codified in relevant part at N.J.S.A. 52:14-17.28c to -17.28d, N.J.S.A. 18:16-17.1, and N.J.S.A. 40A:10-21.1), which requires all public employees to pay a sliding scale percentage of the cost of health benefits for themselves and their dependents, but maintains a "floor" for employee contributions of 1.5% of base salary. S. Budget & Appropriations Comm., Statement to S. 2937 (June 16, 2011). See DePascale v. State, 211 N.J. 40, 45 (2012) (addressing challenge to Chapter 78 as applicable to justices and judges).

Section 45 (codified in relevant part at N.J.S.A. 52:14-17.27(b)) established the SHBP Design Committee and vested it with

> the responsibility for and authority over the various plans and components of those plans, including for medical benefits, prescription benefits, dental, vision, and any other healthcare benefits, offered and

administered by the program. The committee shall have the authority to create, modify, or terminate any plan or component, at its sole discretion. Any reference in law to the State Health Benefits Commission in the context of the creation, modification, or termination of a plan or plan component shall be deemed to apply to the committee.

Similarly, Section 46 (codified in relevant part at N.J.S.A. 52:14-17.46.3(e)) established a SEHBP Design Committee and vested it with

the responsibility for and authority over the various plans and components of those plans, including for medical benefits, prescription benefits, dental, vision, and any other healthcare benefits, offered and administered by the program. The committee shall have the authority to create, modify, or terminate any plan or component, at its sole discretion. Any reference in law to the School Employees' Health Benefits Commission in the context of the creation, modification, or termination of a plan or plan component shall be deemed to apply to the committee.

Section 47 (codified in relevant part at N.J.S.A. 52:14-17.29(J)) provides that "[n]otwithstanding any other provision of law to the contrary the [SHBP Design Committee] shall have the sole discretion to set the amounts for maximums, co-pays, deductibles, and other such participant costs for all plans in the program." Section 49 (codified in relevant part at N.J.S.A. 52:14-17.46.7) provides the SEHBP Design Committee with identical discretion.

The State argues that Chapter 78 supersedes and renders moot plaintiffs' constitutional challenges to the Section 8 Applicability Provision.

As noted previously, the Governor signed Chapters 1, 2, and 3 into law on March 22, 2010. The following month, plaintiffs filed complaints seeking injunctive relief and judgments declaring the laws unconstitutional and unenforceable. Several plaintiffs later amended their complaints. Judge Linda R. Feinberg denied plaintiffs' motions for injunctive relief and also denied motions by the Senate and Assembly to dismiss the complaints against them.

Thereafter, defendants moved to dismiss the consolidated complaints for failure to state a claim upon which relief can be granted. FMBA cross-moved for summary judgment. Following argument, Judge Feinberg issued a comprehensive written opinion granting defendants' motions and dismissing the complaints. This appeal followed.

## II.

We first address plaintiffs' contentions that the court misapplied the standard of review for dismissing a complaint for failure to state a claim upon which relief can be granted. Plaintiffs argue that the court misapplied the applicable standard by improperly considering material outside of the pleadings. According to plaintiffs, because the court

20

considered external materials, it should have treated the motions as summary judgment motions and given the parties an opportunity to take discovery. Plaintiffs also argue that instead of evaluating the complaints to determine whether they suggested a cause of action, the court made factual or substantive determinations.

The standard a trial court must apply when considering a Rule 4:6-2(e) motion to dismiss a complaint for failure to state a claim upon which relief can be granted is "whether a cause of action is 'suggested' by the facts." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989). "In evaluating motions to dismiss, courts consider 'allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.'" Banco Popular N. Am. v. Gandi, 184 N.J. 161, 183 (2005) (quoting Lum v. Bank of Am., 361 F.3d 217, 221 n.3 (3d Cir.), cert. denied, 543 U.S. 918, 125 S. Ct. 271, 160 L. Ed. 2d 203 (2004)). Our Supreme Court has explained that "[i]t is the existence of the fundament of a cause of action in those documents that is pivotal[.]" Ibid.

A motion to dismiss a complaint for failure to state a claim "may not be denied based on the possibility that discovery may establish the requisite claim; rather, the legal requisites for plaintiffs' claim must be apparent from the complaint

21

itself." <u>Edwards v. Prudential Prop. & Cas. Co.</u>, 357 <u>N.J.</u> <u>Super.</u> 196, 202 (App. Div.), <u>certif. denied</u>, 176 <u>N.J.</u> 278 (2003). For that reason, our courts have not hesitated to dismiss complaints with prejudice when a constitutional challenge fails to state a claim. <u>See</u> <u>J.D. ex rel. Scipio-Derrick v. Davy</u>, 415 <u>N.J. Super.</u> 375, 397 (App. Div. 2010).

When we review a trial court's decision to dismiss a complaint under <u>Rule</u> 4:6-2(e), we apply the same standard but our review is de novo. <u>Frederick v. Smith</u>, 416 <u>N.J. Super.</u> 594, 597 (App. Div. 2010), <u>certif. denied</u>, 205 <u>N.J.</u> 317 (2011). We conclude from our de novo review of the record on appeal that the trial court correctly stated and applied the standard of review for evaluating a <u>Rule</u> 4:6-2(e) motion. Contrary to plaintiffs' arguments, the court did not engage in factfinding and did not improperly consider materials outside of the pleadings. Plaintiffs' arguments are, for the most part, unsupported by the record. Their arguments also overlook our Supreme Court's pronouncement about what materials a trial court may consider when evaluating a motion to dismiss a complaint for failure to state a claim.

In her opinion, Judge Feinberg stated explicitly that she had considered "the pleadings, the relevant statutes, regulations and cases cited by the parties." She noted that FMBA had included in its "application for injunctive relief . . .

22

a large notebook consisting of approximately four hundred pages." The judge also noted that FMBA and PBA had submitted certifications. Acknowledging that she had "reviewed the certifications in reaching a decision whether to grant injunctive relief," Judge Feinberg stated that "neither the certifications nor material in the notebook has been considered in deciding the motion to dismiss."

Plaintiffs identify only three sources of information they claim the judge improperly considered: the Special Joint Committee's final report, the DPB FAQs, and a DPB website. But FMBA and PBA referred at length in their complaints to the Special Joint Committee's final report and to DPB's FAQs, and no plaintiff has alleged that the DPB website contained any materials that were both relied upon by the trial court and significantly different in content from the content of the Special Joint Committee report and DPB FAQs. Because FMBA and PBA referred to the Special Joint Committee report and DPB FAQs in their complaint, the court properly considered them under Rule 4:6-2(e). See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d. Cir. 1997); E. Dickerson & Son, Inc. v. Ernst & Young, LLP, 361 N.J. Super. 362, 365 n.1 (App. Div. 2003), aff'd, 179 N.J. 500 (2004); N.J. Sports Prods., Inc. v. Bobby Bostick Promotions, LLC, 405 N.J. Super. 173, 178 (Ch. Div. 2007).

Aside from FMBA's and PBA's discussions in their complaints of materials they now suggest the court should not have considered, no plaintiff disputes that the Special Joint Committee report and DPB FAQs are matters of public record. See Hall v. Virginia, 385 F.3d 421, 424 n.3 (4th Cir. 2004) (noting that the court can consider publicly available statistics on Virginia Division of Legislative Services' official website), cert. denied, 544 U.S. 961, 125 S. Ct. 1725, 161 L. Ed. 2d 602 (2005). Plaintiffs' arguments overlook our Supreme Court's explicit statement that courts evaluating motions to dismiss under Rule 4:6-2(e) may consider, in addition to the complaint and its attachments, matters of public record. Banco Popular N. Am., supra, 184 N.J. at 183. Accordingly, we reject plaintiffs' argument that the trial court misapplied the applicable standard when it granted defendants' Rule 4:6-2(e) motions.

### III.

Plaintiffs next argue that defendants' motions should have been denied, and FMBA's cross-motion for summary judgment granted, because Chapters 1, 2, and 3 are unconstitutional, and their complaints so stated. While addressing those arguments, we bear in mind the following fundamental principles. Statutes are presumed to be constitutional. DePascale, supra, 211 N.J. at 63. This is because

24

> [i]n our tripartite form of government
> [judicial review of legislation] has always
> been exercised with extreme self-restraint,
> and with a deep awareness that the
> challenged enactment represents the
> considered action of a body composed of
> popularly elected representatives. As a
> result, judicial decisions from the time of
> Chief Justice Marshall reveal an unswerving
> acceptance of the principle that every
> possible presumption favors the validity of
> an act of the Legislature. . . . [A]ll the
> relevant New Jersey cases display faithful
> judicial deference to the will of the
> lawmakers whenever reasonable men might
> differ as to whether the means devised by
> the Legislature to serve a public purpose
> conform to the Constitution.
>
> [N.J. Sports & Exposition Auth. v. McCrane,
> 61 N.J. 1, 8 (citation omitted), appeal
> dismissed sub nom., Borough of E. Rutherford
> v. N.J. Sports & Exposition Auth., 409 U.S.
> 943, 93 S. Ct. 270, 34 L. Ed. 2d 215
> (1972).]

For those reasons, a statute "will not be declared void unless it is clearly repugnant to the Constitution." Trautmann ex rel. Trautmann v. Christie, 211 N.J. 300, 307 (2012) (quoting Newark Superior Officers Ass'n v. City of Newark, 98 N.J. 212, 222 (1985)). A party seeking to rebut "[t]he strong presumption of constitutionality that attaches to a statute . . . [must] show[] that the statute's 'repugnancy to the Constitution is clear beyond a reasonable doubt.'" Hamilton Amusement Ctr. v. Verniero, 156 N.J. 254, 285 (1998) (quoting Harvey v. Bd. of Chosen Freeholders, 30 N.J. 381, 388 (1959)), cert. denied, 527

<u>U.S.</u> 1021, 119 <u>S. Ct.</u> 2365, 155 <u>L. Ed.</u> 2d 770 (1999). Plaintiffs have failed to carry that heavy burden.

A.

Plaintiffs first contend that the court erred in dismissing the counts in their complaints alleging that Chapter 2 violates Article I, Paragraph 19 of the New Jersey Constitution. That provision states as to public employees: "Persons in public employment shall have the right to organize, present to and make known to the State, or any of its political subdivisions or agencies, their grievances and proposals through representatives of their own choosing."

Plaintiffs chiefly challenge the 1.5% contribution required by Chapter 2, and the Section 8 Applicability Provision. In addition, FMBA argues that Chapter 3, Sections 1, 2, and 4, violate Article I, Paragraph 19. Plaintiffs contend that the trial court erred by dismissing these claims under <u>Rule</u> 4:6-2(e).

The State Executive Defendants assert that Chapter 2 respects the rights guaranteed to public employees by Article I, Paragraph 19 of the State Constitution, and that the trial court did not err by dismissing plaintiffs' challenges to Chapter 2 under <u>Rule</u> 4:6-2(e) because their challenges presented legal, not factual, issues. The State Executive Defendants also contend that plaintiffs' argument that Chapter 2 violates

26

Article I, Paragraph 19 of the State Constitution is moot because it has been superseded by Chapter 78. Further, the State Executive Defendants contend that all of plaintiffs' arguments that the Section 8 Applicability Provision violates various federal and state constitutional protections are moot because the Section 8 Applicability Provision has been superseded by Chapter 78.

We agree with the State Executive Defendants that Chapter 78 renders plaintiffs' challenges to the Section 8 Applicability Provision moot. With the enactment of Chapter 78, the Legislature has vested the Design Committees with the "sole discretion" to create, modify, or terminate any plan or component, as well as to set amounts for maximums, co-pays, deductibles, and other participant costs for all plans offered. The "sole discretion" of the Design Committees to create, modify, or terminate any plan includes plans for "medical benefits, prescription benefits, dental, vision, and any other healthcare benefits." L. 2011, c. 78, §§ 45 and 46.

In view of the Legislature's vesting in the Design Committees the sole discretion to make changes in the respective healthcare plans, such changes are no longer effectuated through collective negotiations between the State and its employees. The provisions of Chapter 78 have superseded the Section 8 Applicability Provision. "[C]ourts should not reach

constitutional questions unless necessary to the disposition of the litigation." O'Keefe v. Passaic Valley Water Comm'n, 132 N.J. 234, 240 (1993). Because they are moot, we decline to address plaintiffs' challenges to the Section 8 Applicability Provision.

We turn to plaintiffs' arguments that the provisions of Chapter 2 requiring the 1.5% contribution, as well as the provisions of Chapter 3 limiting both supplemental compensation for accumulated sick time and the carrying-forward of vacation time, violate the constitutional right of public employees to organize and to present their grievances and proposals through their chosen representatives. We are unpersuaded by plaintiffs' arguments.

To implement the constitutional right of public employees to organize and present grievances and proposals, the Legislature enacted the New Jersey Employer-Employee Relations Act (EERA), N.J.S.A. 34:13A-1 to -43. The EERA defines the scope of public employees' rights of collective negotiation. In re Local 195, IFPTE, AFL-CIO, 88 N.J. 393, 401 (1982). N.J.S.A. 34:13A-5.3 provides in part that

> Representatives designated or selected by public employees for the purposes of collective negotiation by the majority of the employees in a unit . . . shall be the exclusive representatives for collective negotiation concerning the terms and

conditions of employment of the employees in such unit. . . .

The scope of collective negotiations by public sector employees concerning "the terms and conditions of employment" is not, however, unlimited. See _Lullo v. Int'l Ass'n of Fire Fighters_, 55 _N.J._ 409, 440 (1970).

> [A] subject is negotiable between public employers and employees when (1) the item intimately and directly affects the work and welfare of public employees; (2) the subject has not been fully or partially preempted by statute or regulation; and (3) a negotiated agreement would not significantly interfere with the determination of governmental policy. To decide whether a negotiated agreement would significantly interfere with the determination of governmental policy, it is necessary to balance the interests of the public employees and the public employer. When the dominant concern is the government's managerial prerogative to determine policy, a subject may not be included in collective negotiations even though it may intimately affect employees' working conditions.
>
> [_In re Local 195_, _supra_, 88 _N.J._ at 404-05.]

We agree with Judge Feinberg that although health care benefits are a negotiable term or condition of employment under the EERA, the Legislature has preempted negotiation of the 1.5% contribution. "As a general rule, an otherwise negotiable topic cannot be the subject of a negotiated agreement if it is preempted by legislation." _Bethlehem Twp. Bd. of Educ. v. Bethlehem Twp. Educ. Ass'n._, 91 _N.J._ 38, 44 (1982). A topic is

preempted if a "regulation fixes a term and condition of employment 'expressly, specifically and comprehensively.'" Ibid. (quoting Council of N.J. State College Locals v. State Bd. of Higher Educ., 91 N.J. 18, 30 (1982)). The Legislature has fixed the 1.5% contribution "expressly, specifically and comprehensively."[2]

PBA does not dispute that the Legislature may preempt negotiations on a term or condition of employment, but argues that the implementation of Chapter 2 to certain matters being arbitrated under the Police and Fire Public Interest Arbitration Reform Act (Reform Act), N.J.S.A. 34:13A-14 to -21, violates the constitutional right of public employees to present grievances through their chosen representatives. Specifically, PBA argues that in interest arbitrations where "the arbitral records were closed prior to the new laws' effective date," representatives were effectively "precluded from submitting evidence over the impact of new law to the interest arbitrator." We disagree.

To begin with, Article 1, Paragraph 19 guarantees to public employees the right to present their grievances and proposals to "the State, or any of its political subdivisions or agencies." The Supreme Court has interpreted this paragraph's language

---

[2] The contribution amount was changed in Chapter 78. Chapter 78, Section 39 requires health-care contributions based on employees' earning levels. See N.J.S.A. 52:14-17.28c.

concerning public employees "to impose on the employer in the public sector only the duty to meet with its employees or their chosen representatives and to consider in good faith any grievance or proposals presented on their behalf."  Lullo, supra, 55 N.J. at 416.  Interest arbitrators are not employers. Rather, interest arbitrators conduct an "essentially adversarial" process, "a statutory method of resolving collective-negotiation disputes."  Hillsdale PBA Local 207 v. Borough of Hillsdale, 137 N.J. 71, 80, 82 (1994).[3]

Additionally, arbitrators rendering a decision in compulsory interest arbitration cases must apply the relevant law.  Paterson Police PBA Local 1 v. City of Paterson, ___ N.J. Super. ___, ___ (App. Div. 2013) (slip op. at 17).  See also Kearny PBA Local # 21 v. Town of Kearny, 81 N.J. 208, 217 (1979).  They must "decide the dispute based on a reasonable determination of the issues, giving due weight to those factors listed [in N.J.S.A. 34:13A-16(g)(1)-(9)]."  N.J.S.A. 34:13A-16(g).  If an arbitrator requires additional evidence as to any factor, the arbitrator "may request the parties to supplement their presentations,"  PBA Local 207, supra, 137 N.J. at 83-84,

---

[3] PBA Local 207 involved certain interest arbitration procedures that were later eliminated from the Reform Act.  In re City of Camden, 429 N.J. Super. 309, 328 n.7 (App. Div.), certif. denied, 215 N.J. 485 (2013).  Nevertheless, "the principles set forth in [PBA Local 207] remain controlling."  Ibid.

but "the arbitrator need not require the production of evidence on each factor." Id. at 84.

Arbitrators are vested with significant discretion in the manner in which they conduct hearings. For example, an arbitrator may "conduct hearings, and require the attendance of such witnesses and the production of such books, papers, contracts, agreements, and documents as the arbitrator may deem material to a just determination of the issues in dispute," N.J.A.C. 19:16-5.7(e); grant adjournments, N.J.A.C. 19:16-5.7(j); permit the parties to submit post-hearing briefs and grant the parties special permission to introduce new factual material in the post-hearing briefs. N.J.A.C. 19:16-5.7(l).

PBA has cited no authority suggesting that in those limited instances where a new law has been enacted after parties have presented evidence in interest arbitration proceedings but before the arbitrators have rendered decisions, and the new law might affect pending issues, arbitrators cannot exercise their discretion to have the parties submit supplemental briefs or new evidence. We discern no reason for prohibiting arbitrators from so exercising their discretion in such limited circumstances. Nor do we discern any reason why the parties should be prohibited from requesting permission from arbitrators to supplement their presentations in such limited circumstances.

Of course, arbitrators may reject such requests if the arbitrators deem supplemental submissions unnecessary.

Neither the language of the State Constitution, nor our Supreme Court's decisions concerning the obligations Article I, Paragraph 19 imposes on public employers, supports PBA's argument that Chapter 2 violates this constitutional provision. In view of those considerations, PBA has not demonstrated either that Chapter 2 violates Article I, Paragraph 19 of the State Constitution, or that Judge Feinberg erred when she dismissed plaintiffs' complaints for failure to state a claim.

B.

We turn to plaintiffs' contentions that the provisions of Chapter 2 requiring public employees and retirees to make the 1.5% contribution violate the equal protection guarantees of the Federal and State Constitutions. We are unpersuaded.

The Fourteenth Amendment to the United States Constitution provides that "[n]o State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws." "The Equal Protection Clause directs that 'all persons similarly circumstanced shall be treated alike.'" Plyler v. Doe, 457 U.S. 202, 216, 102 S. Ct. 2382, 2394, 72 L. Ed. 2d 786, 798 (1982) (quoting F. S. Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S. Ct. 560, 562, 64 L. Ed. 989, 991 (1920)). However, the "legislature must have

substantial latitude to establish classifications that roughly approximate the nature of the problem perceived, that accommodate competing concerns both public and private, and that account for limitations on the practical ability of the State to remedy every ill."  Id. at 216, 102 S. Ct. at 2394, 72 L. Ed. 2d at 798-99.   Thus, "[i]f a statutory distinction has some reasonable basis, 'a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect.'"  Whitaker v. Devilla, 147 N.J. 341, 358 (1997) (quoting Dandridge v. Williams, 397 U.S. 471, 485, 90 S. Ct. 1153, 1161, 25 L. Ed. 2d 491, 501 (1970)).  Accord Caviglia v. Royal Tours of Am., 178 N.J. 460, 480 (2004).  "Under the federal equal protection clause, absent an impact on a fundamental right or targeting of a suspect class, a statute must be upheld 'so long as it bears a rational relation to some legitimate end.'"  Trautmann, supra, 211 N.J. at 304 (quoting Romer v. Evans, 517 U.S. 620, 631, 116 S. Ct. 1620, 1627, 134 L. Ed. 2d 855, 865 (1996)).

Our State Constitution does not contain an equal protection clause.  State v. Chun, 194 N.J. 54, 101, cert. denied, 555 U.S. 825, 129 S. Ct. 158, 172 L. Ed. 2d 41 (2008).  Yet, the concept of equal protection is implicit in Article I, Paragraph 1.  McKenney v. Byrne, 82 N.J. 304, 316 (1980); Guaman v. Velez (Guaman I), 421 N.J. Super. 239, 267 (App. Div. 2011).   In

34

analyzing equal protection challenges under the State Constitution, courts apply "a more flexible balancing test that considers three factors: '(1) the nature of the right asserted; (2) the extent to which the statute intrudes upon that right; and (3) the public need for the intrusion.'" Guaman I, supra, 421 N.J. Super. at 267 (quoting State v. O'Hagen, 189 N.J. 140, 164 (2007)). Although this analysis differs from the "federal tiered approach, the tests weigh the same factors and often produce the same result." Sojourner A. v. N.J. Dep't of Human Servs., 177 N.J. 318, 333 (2003).

Plaintiffs contend the sections of Chapter 2 that require the 1.5% contribution violate the federal and state equal protection guarantees because they create arbitrary classifications among employees. For example, NJEA asserts that the 1.5% contribution "applies to all public employees regardless of the type or level of coverage applicable to the individual employee, or the actual cost of coverage to the employer." According to NJEA, under that scheme, an employee opting for single coverage would pay the same "mandatory minimum contribution as an employee opting for family coverage." NJEA also asserts that the 1.5% contribution will have a disproportionate impact on public employees "at the lower end of the income spectrum." Teamsters add that public employees who receive benefits "from a private insurer or from a union benefit

fund" are required to pay the 1.5% contribution to offset employer health care costs even though they receive no benefits from the employer plans.

Chapter 2 does not, however, affect a fundamental right or target a suspect class.[4] The law does, on the other hand, bear a rational relation to legitimate State interests. Those interests include controlling the cost of providing health care benefits to public employees; reducing administrative expenses; and ensuring consistency in health benefit coverage and costs for public employees. Moreover, the changes in Chapter 2 are part of legislation enacted to improve the fiscal strength of State and local governments; reduce taxpayer burdens; and ensure that the health and pension systems remain viable for current and future employees.

Moreover, the provisions of Chapter 2 are rationally related to those State interests, as is evident from the DPB estimates that the required contributions will result in savings of hundreds of millions of dollars. Though perhaps an imperfect scheme because imposing the 1.5% contribution may have different

[4] NJEA asserts that the Section 8 Applicability Provision violates equal protection guarantees because it infringes upon public employees' fundamental right, under Article I, Paragraph 19 of the State Constitution, to present grievances to their employers through their chosen representatives. We have previously explained that plaintiffs' challenges to the Section 8 Applicability Provision are moot. We will not address those claims again.

consequences for some classes of employees, perfection is not required. Chapter 2 falls well within the legislative "latitude to establish classifications that roughly approximate the nature of the problem perceived, that accommodate competing concerns both public and private, and that account for limitations on the practical ability of the State to remedy every ill." Plyler, supra, 457 U.S. at 216, 102 S. Ct. at 2394, 72 L. Ed. 2d at 798-99.

Similarly, Chapter 2 satisfies Article 1, Paragraph 1 of the New Jersey Constitution. "There is, in this case, an 'appropriate governmental interest suitably furthered by the differential treatment involved.'" Trautmann, supra, 211 N.J. at 305 (quoting Barone v. Dep't of Human Servs., 107 N.J. 355, 368 (1987)). As we have stated, the State has a legitimate interest in controlling the cost of health care benefits, ensuring consistency in health benefit coverage, and further ensuring that the programs that make health care coverage available to public employees remain viable for both current and future employees. The State has a further interest in minimizing taxpayer burdens.

For the reasons we have previously explained, the State's interests are furthered considerably by the 1.5% contribution requirement. And considering the need to ensure that health care programs remain viable for future as well as current public

employees and retirees, the intrusion on the interest of current employees and retirees not to make a minimum 1.5% contribution -- for any reason -- is itself minimal.[5]

For substantially the same reasons, we reject FMBA's argument that Chapter 1, which changes the definition of "final compensation" used to calculate retirement benefits, violates the equal protection guarantees of the Federal and State Constitutions because it results in arbitrary classifications among employees.

Chapter 1, Section 22 (codified in relevant part at N.J.S.A. 43:16A-1(28)(a)-(b)), provides that for employees who become members of PFRS after May 21, 2010, "final compensation" means the average annual compensation for any three fiscal

---

[5] Plaintiffs have not clearly defined the specific interests they claim are impacted by the 1.5% contribution. NJEA asserts that Chapter 2 disproportionately impacts lower-income State employees by requiring they contribute the same percentage of their salaries as other employees. We note that the provisions of Chapter 2 concerning the 1.5% contribution have been partially superseded by the provisions of Chapter 78 requiring health care contributions based on employees' earning levels, with a minimum, or floor, of 1.5% base salary. See L. 2011, c. 78, § 39 (codified at N.J.S.A. 52:14-17.28c); L. 2011, c. 78, § 40 (codified at N.J.S.A. 52:14-17.28d) (employees participating in SHBP and SEHBP); L. 2011, c. 78, § 41 (codified at N.J.S.A. 18:16-17.1) (employees of boards of education); L. 2011, c. 78, § 42 (codified at N.J.S.A. 40A:10-21.1) (employees of a local unit or agency thereof). These provisions of Chapter 78 also require different contributions for individual and family coverage. L. 2011, c. 78, § 39 (codified at N.J.S.A. 52:14-17.28c).

years of membership.[6]  For employees who became members before that date, final compensation "means the compensation received by the member in the last 12 months of creditable service preceding his retirement or death."  N.J.S.A. 43:16A-1(28)(a).

We agree with Judge Feinberg that the classification between current and new enrollees is rationally related to legitimate State goals including cost savings, ensuring the fiscal stability of the plan, and administrative efficiency.  See Brown v. State, 356 N.J. Super. 71, 82 (App. Div. 2002) (explaining that the Legislature may limit benefits it confers in the interest of preserving State's economic resources).  The law fully comports with the federal and state equal protection guarantees.

C.

FMBA and Teamsters next argue that the judge erred by dismissing their claim that the 1.5% contribution requirement of Chapter 2 violates the Contract Clauses of the Federal and State Constitutions because the laws impaired existing and pending CNAs.

---

[6] Chapter 1, Section 20 (amending N.J.S.A. 18A:66-2) and Chapter 1, Section 21 (amending N.J.S.A. 43:15A-6), change the definition of final compensation for new enrollees in TPAF and PERS from the average compensation for the three years prior to retirement, to the average of five years.

The federal and state constitutions prohibit the passage of any "law impairing the obligation of contracts." U.S. Const. art. I, § 10, cl. 1; N.J. Const. art. IV, § 7, ¶ 3. "The two clauses are applied coextensively and provide the same protection." N.J. Educ. Ass'n v. State, 412 N.J. Super. 192, 205 (App. Div.) (internal quotation marks omitted), certif. denied, 202 N.J. 347 (2010). In addressing a claim for violation of the Contract Clause, the threshold inquiry is whether the law "operated as a substantial impairment of a contractual relationship." Allied Structural Steel Co. v. Spannaus, 438 U.S. 234, 244, 98 S. Ct. 2716, 2722, 57 L. Ed. 2d 727, 736 (1978). In making that determination courts inquire whether: 1) "there is a contractual relationship"; 2) the "change in law impairs that contractual relationship"; and 3) "the impairment is substantial." Gen. Motors Corp. v. Romein, 503 U.S. 181, 186, 112 S. Ct. 1105, 1109, 117 L. Ed. 2d 328, 337 (1992). If the state law constitutes a substantial impairment, it may nonetheless "be constitutional if it is reasonable and necessary to serve an important public purpose." U.S. Trust Co. v. New Jersey, 431 U.S. 1, 25, 97 S. Ct. 1505, 1519, 52 L. Ed. 2d 92, 112 (1977).

We affirm, substantially for the reasons explained by Judge Feinberg. We add only the following comments. FMBA and Teamsters base their arguments primarily on the premise that

their CNAs do not expire on their expiration dates, but rather continue, either under a theory of implied contract or by statute. The statute FMBA relies on is N.J.S.A. 34:13A-21, which states in part that "[d]uring the pendency of proceedings before the [interest] arbitrator, existing wages, hours and other conditions of employment shall not be changed by action of either party without the consent of the other[.]" Teamsters rely on N.J.S.A. 34:13A-5.3, which states in part that "[p]roposed new rules or modifications of existing rules governing working conditions shall be negotiated with the majority representative before they are established." This statutory rule, "known as the prescription against unilateral change of the status quo, prohibit[s] an employer from unilaterally altering the status quo concerning mandatory bargaining topics, whether established by expired contract or by past practice, without first bargaining to impasse." Bd. of Educ. of Neptune v. Neptune Twp. Educ. Ass'n, 144 N.J. 16, 22 (1996) (alteration in original) (internal quotation marks omitted).

Chapter 2 does not require public employees to make the 1.5% contribution until after existing CNAs expire. Contrary to plaintiffs' arguments, N.J.S.A. 34:13A-21 and N.J.S.A. 34:13A-5.3 create statutory, not contractual, prohibitions against a party changing the terms and conditions of employment during the

41                                        A-3274-10T3

pendency of interest arbitration proceedings or during the negotiation of a new CNA. As we have previously explained, the statutes apply to the parties to the expired CNA, not to the Legislature. And because the Legislature created the prohibitions against such changes, the Legislature can modify them by statute. Further, even if the terms of an expired CNA are deemed to be implied in fact until new terms are negotiated, public employees have neither a contractual right nor a reasonable expectation that terms implied in fact under such circumstances will survive superseding terms imposed by preemptory legislation.

## D.

We reject plaintiffs' remaining contentions substantially for the reasons that Judge Feinberg rejected them in her well-reasoned decision. Those contentions include the following arguments: the 1.5% contribution is an invalid tax on income that did not originate in the General Assembly; the sections of Chapter 2 imposing the 1.5% contribution are void for vagueness; Chapters 1, 2, and 3 violate plaintiffs' rights to procedural and substantive due process, and constitute a taking; and Chapter 2 is a special law that decreases the emoluments of public employees and also regulates the internal affairs of municipalities, all in violation of the State Constitution.

These and plaintiffs' other remaining arguments do not warrant further discussion in a written opinion.  R. 2:11-3(e)(1)(E).

IV.

The Legislative Defendants argue, as an alternative reason for affirming the trial court's judgment, that they are immune from suit because an action against the State Senate and Assembly challenging the constitutionality of a law violates the separation of powers and the Speech or Debate Clause of the New Jersey Constitution; and that Judge Feinberg erred by ruling to the contrary.

The doctrine of separation of powers is set forth in Article III, Paragraph 1 of the New Jersey Constitution, which provides that "[t]he powers of the government shall be divided among three distinct branches, the legislative, executive, and judicial.  No person or persons belonging to or constituting one branch shall exercise any of the powers properly belonging to either of the others, except as expressly provided in this Constitution."  The Speech or Debate Clause, set forth in Article IV, Section IV, Paragraph 9 of the New Jersey Constitution, provides that:

> Members of the Senate and General Assembly shall, in all cases except treason and high misdemeanor, be privileged from arrest during their attendance at the sitting of their respective houses, and in going to and returning from the same; and for any statement, speech or debate in either house

43

or at any meeting of a legislative committee, they shall not be questioned in any other place.

Preliminarily, we note that the record on appeal is not clear as to whether Judge Feinberg dismissed the claims against the President of the Senate and Speaker of the Assembly. She thought she had dismissed those claims. The Legislative Defendants believe that the judge was mistaken and did not dismiss those claims. Regardless, it does not appear from the record on appeal that any plaintiff seriously opposed the Legislative Defendants' application in the trial court to dismiss the claims against the President of the Senate and Speaker of the Assembly. Those claims should never have been filed. There was no basis, in law or in fact, for making them.

Legislative immunity guaranteed by the Speech or Debate Clause assures that the speech and conduct of legislators acting within the sphere of legitimate legislative activity will not be made the basis for a civil judgment. Gilbert v. Gladden, 87 N.J. 275, 292-93 (1981). Moreover, in a case where the sole relief sought is a judicial declaration that a statute is unconstitutional, naming individual legislators is a meaningless exercise. They are unnecessary parties because the relief sought can be obtained without them, and nothing can be obtained from them. Naming individual legislators in cases where such

limited relief is sought accomplishes nothing other than distraction, wasted time, and perhaps wasted money.

Those and other reasons could arguably lead to the same conclusion as to the Senate and the Assembly. Interpreting the Speech or Debate Clause to apply to those institutions would certainly serve several salient purposes. And as a general proposition, a plaintiff can obtain a judgment declaring that a statute is unconstitutional by naming only the State as a defendant. See DePascale, supra, 211 N.J. at 47. We conclude, however, that the prudent course is not to decide the issue in this case.

We have previously noted that "courts should not reach constitutional questions unless necessary to the disposition of the litigation." O'Keefe, supra, 132 N.J. at 240. Here, deciding this constitutional issue is unnecessary. We have already upheld Chapters 1, 2, and 3. Additionally, the Legislative Defendants have not filed a cross-appeal, but have advanced their constitutional argument only as an alternative reason for affirming the trial court's judgment. This alternative reason is unnecessary in view of our rejection of plaintiffs' claims. This action may be, as the Legislative Defendants say, one in which plaintiffs seek only a declaratory judgment that Chapters 1, 2, and 3 are unconstitutional, but plaintiffs initially sought injunctive relief and Judge Feinberg

45

issued a comprehensive opinion as to that claim. The parties have not briefed whether the Legislative Defendants were indispensable parties to the claim for injunctive relief.

For all those reasons, we decline to address the Legislative Defendants' alternative constitutional argument.

## V.

We end where we began. We recognize that Chapters 1, 2, and 3 affect the disposable income of the State's active and retired public employees. But the Legislature enacted these laws to ensure that the State's pension and health care systems remain fiscally sound and that the State's taxpayers are not unduly burdened. The legislation furthers legitimate State interests and violates neither the New Jersey Constitution nor the United States Constitution.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION