161 A.3d 154

K.A. AND K.I.A.,[1] PLAINTIFFS, v. J.L., DEFENDANT.

Superior Court of New Jersey
Chancery Division
General Equity Part
Morris County

Decided: April 11, 2016

---

[1] The court utilizes initials in place of actual names of the parties and child to protect their identities.

248

*James W. Miskowski* for plaintiffs.

*J.L.*, defendant pro se.

STEPHAN C. HANSBURY, P.J., Ch.

Plaintiffs instituted this action to enjoin defendant from holding himself out as the father of their son, Z.A., to enjoin defendant from contacting plaintiffs and Z.A., and to compel defendant to remove information pertaining to Z.A. that he has allegedly published online. Plaintiffs are Z.A.'s adoptive parents. Z.A.'s biological father of record is J.P.

Plaintiffs indicate that defendant is a "complete stranger" to them, and they have not had any contact with him prior to the events that gave rise to this litigation. Plaintiffs allege that defendant initiated contact with their family by locating K.A.'s Facebook profile and sending him a friend request, which K.A. denied. Plaintiffs allege that defendant then contacted Z.A. through Instagram, another social media platform. Plaintiffs represent that defendant communicated to Z.A. that Z.A. had been adopted and identified himself as Z.A.'s biological father. Plaintiffs further allege that defendant informed Z.A. that he knew the location of Z.A.'s birth and disclosed both the identity of Z.A.'s birth mother and that Z.A. has biological siblings at large.

Plaintiffs state that defendant incorporated a picture of Z.A. into an image comprised of three separate photographs, each featuring a different person, and allege that defendant holds out the picture as an image of his children. Plaintiffs further allege that defendant published the conglomerate image on his Facebook page, where it is presently available to the public. Plaintiffs posit that defendant obtained the picture of Z.A. from K.A.'s Facebook profile. Plaintiffs also allege that defendant had sent a Facebook friend request to K.A.'s sister, which she, too, denied.

Plaintiffs' attorney, James Miskowski, certifies that he mailed cease and desist notices to defendant's two last known addresses, both of which are in Pennsylvania, by certified and regular mail. Miskowski reports that the certified mailings were returned as unclaimed, but the regular mail, which was posted on November 4, 2015, had not been returned as of November 30, 2015. Plaintiffs have submitted partial copies of the certified mail envelopes. One

envelope bears the words, "RETURN TO SENDER/ATTEMPT-
ED—NOT KNOWN/UNABLE TO FORWARD," and the other
reads, "RETURN TO SENDER/NOT DELIVERABLE AS AD-
DRESSED/UNABLE TO FORWARD." In light of their difficulty
in reaching defendant by mail, plaintiffs now seek leave to effectu-
ate substituted service of process via Facebook.

## STATEMENT OF REASONS

The issue presented here is whether this court is able to
assert personal jurisdiction over defendant by virtue of the service
of the order to show cause and complaint by Facebook. As a
preliminary matter, the addresses that plaintiffs allege are defen-
dant's are out of state. A court cannot assert jurisdiction over an
out-of-state defendant unless such defendant has engaged in con-
tact with the forum state. *Waste Mgmt. v. Admiral Ins. Co.*, 138
*N.J.* 106, 649 *A.*2d 379 (1994). An out-of-state activity constitutes a
contact with the state for the purposes of personal jurisdiction
where the actor knew that its effects would be manifested in the
forum state. *World–Wide Volkswagen Corp. v. Woodson*, 444 *U.S.*
286, 311, 100 *S.Ct.* 559, 568, 62 *L.Ed.*2d 490, 510 (1980). This
"effects test" has been used to support findings of jurisdiction over
defendants whose out-of-state conduct reached into the forum
state and targeted an in-state resident, thus making the forum
state the focal point of the harm. *See, e.g., Calder v. Jones*, 465
*U.S.* 783, 789, 104 *S.Ct.* 1482, 1487, 79 *L.Ed.*2d 804, 812 (1984);
*Toys "R" Us, Inc. v. Step Two, S.A.*, 318 *F.*3d 446 (3d Cir. 2003).
The court in *Toys "R" Us* expressly noted that a defendant's
intentional interaction with the forum state via the internet is
sufficient to confer personal jurisdiction. *Id.* at 452. Here, the
holder of the social media accounts knowingly reached out to
various members of plaintiffs' family, who are New Jersey resi-
dents. As it was clear that any resultant harm would be concen-
trated in this state, such conduct confers personal jurisdiction on
this court over the actor.

 The scope of personal jurisdiction over an out-of-state defendant is contingent on the degree of that defendant's contact with the forum state. *Waste Mgmt., supra,* 138 *N.J.* at 106, 649 *A.*2d 379. For example, where a defendant has engaged in "continuous and systematic activities" in another state, the courts of that state may exercise general jurisdiction over that defendant. *Id.* at 119, 649 *A.*2d 379. Conversely, where the defendant's activities do not rise to the level of "continuous and systematic," the courts are only able to exercise specific jurisdiction over the defendant—in other words, jurisdiction limited to causes of action arising directly out of the defendant's contacts with the state. *Ibid.* Here, the only contacts with New Jersey alleged of defendant are a handful of activities carried out through social media that target New Jersey residents, plaintiffs' son. Though these activities are not continuous and systematic such that they support a finding of general jurisdiction, they are sufficient to justify specific jurisdiction over related causes of action. As these activities are the subject of plaintiffs' complaint, this court can properly exercise jurisdiction over the account holder for the purpose of addressing plaintiffs' claims.

 However, personal jurisdiction has one additional requirement that must be satisfied before it is complete—service of process must be effectuated on the defendant. As a preliminary matter, a plaintiff must serve the complaint and summons on the defendant personally. *R.* 4:4–4(a). If, however, a plaintiff's reasonable, good-faith attempt to effectuate personal service proves unsuccessful, the plaintiff may then attempt to effectuate service using the secondary methods prescribed in the court rules. *R.* 4:4–3(b). The *Rules* also provide that, as a tertiary and last resort, "If service cannot be made by any of the modes provided by this rule, any defendant may be served as provided by court order, consistent with due process of law." *R.* 4:4–4(b)(3).

Service of process via Facebook can, in certain circumstances, satisfy the test set forth in *O'Connor v. Altus,* 67 *N.J.* 106, 335 *A.*2d 545 (1975). *Cf.* Mindy P. Fox, *In Defense of Service of*

*Process via Facebook*, New Jersey Law Journal, January 17, 2013 (arguing that service via Facebook is consistent with due process in certain cases). Given that the Facebook and Instagram accounts at issue are the sole conduits of the purported harm, service via Facebook is reasonably calculated to apprise the account holder of the pendency of this action and afford him or her an opportunity to defend against plaintiffs' claims. The account holder's recent activity on Facebook indicates that the account is active and that receipt of the documents is probable. Additionally, Facebook includes a feature that allows the sender of a message to see whether the recipient has opened the same, thus indicating that the recipient is on notice of the message's contents.

Here, the court is satisfied that the only method of service available to plaintiffs is Facebook. The only address that plaintiffs could locate was not a good address. Therefore, service cannot be accomplished personally or by mail.

The nature of the relief sought, an injunction to prohibit contact, makes newspaper publication futile. *R.* 4:4–5(a)(3). The defendant must receive the pleading and know of the restraint if the conduct is to be stopped.

*Rule* 4:4–4(b)(3) permits a court to enter an order permitting service by means other than those provided by rule "consistent with due process."

 The only communication received from defendant has been through the Facebook account. Permitting service in this case through Facebook meets the due process requirement. The "constitutional requirements of service of process" are "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *O'Connor, supra,* 67 *N.J.* at 126, 335 *A.*2d 545 (citing *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 *U.S.* 306, 314, 70 *S.Ct.* 652, 657, 94 *L.Ed.*2d 865, 873 (1950)). The Supreme Court in *Mullane* expounded that "[t]he notice must be of such nature as reasonably to convey the

required information, and it must afford a reasonable time for those interested to make their appearance. But, if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied." *Mullane, supra,* 339 *U.S.* at 314–15, 70 *S.Ct.* 652, 657, 94 *L.Ed.*2d at 873. The determination of due process requires the balancing of "the vital interest of the State in bringing any issues as to its fiduciaries to a final settlement" against "the individual interest sought to be protected by the Fourteenth Amendment." *Id.* at 313–314, 70 *S.Ct.* at 657, 94 *L.Ed.*2d at 873.

The court notes that there is a split among courts on whether service by social media is allowed.

There are only a handful of unpublished decisions, mostly from Federal District Courts, that have addressed the issue of service of process being accomplished through social media, with there being an almost even split between those decisions approving it and those rejecting it. The cases permitting such service have done so only on condition that the papers commencing the lawsuit be served on the defendant by another method as well.

■ In order to establish that service by Facebook is proper, this court analyzed the following factors:

First, can defendant be served by conventional means, those specifically permitted by court rule?

Second, is the relief sought appropriate for service by publication? Here, that is clear. The relief sought is to stop conduct and, therefore, actual service is essential.

Third, will service by Facebook still protect defendant's due process rights? He has demonstrated his own Facebook account. There is, therefore, a substantial likelihood that he will receive the complaint and order to show cause. The court notes here that defendant did appear by telephone at the hearing, thus establishing that he was served. Such confirmation need not always be present given the facts of a particular case if there is sufficient evidence that the Facebook account was the defendant's.

In *Dobkin v. Chapman*, 21 *N.Y.*2d 490, 503, 289 *N.Y.S.*2d 161, 236 *N.E.*2d 451 (1968), the New York Court of Appeals analyzed the constitutionality question balancing several factors: (1) plaintiff's need; (2) public interest; (3) reasonableness of the plaintiff's efforts to inform the defendant; and (4) availability of other safeguards for the defendant's interests. In this matter, enjoining defendant's improper conduct is essential as a protection to this boy. The public interest in preserving the sanctity of the family is a significant public interest. Plaintiffs undertook all reasonable means authorized by court rule to inform defendant to no avail. The use of defendant's verified Facebook account is assurance that service would be effective.

In *Rudikoff v. Byrne*, 101 *N.J.Super.* 29, 40, 242 *A.*2d 880 (Law Div. 1968), a New Jersey trial court employed the standard set forth in *Dobkin*, though referring to it by a companion case name, *Keller v. Rappoport.* It further noted that *Keller* did not require certainty that defendant, in fact, received notices that were sent. *Id.* at 39. Here, such certainty exists as defendant responded and participated in the hearing.

In summary, therefore, service by Facebook in this case is permitted. The court is satisfied that after diligent efforts, personal service could not be accomplished. Next, service by publication would not be efficient given the nature of the relief sought, an injunction.

The court is further satisfied that the Facebook account of defendant was his as it was that account that defendant employed to contact plaintiffs' son. The fundamentals of due process are satisfied.

Finally, defendant acknowledged receipt of the summons and complaint. Service was therefore successful. The court further issues the restraint sought. The standards required by *Crowe v. De Gioia*, 90 *N.J.* 126, 447 *A.*2d 173 (1982) have been met. There is no adequate remedy at law. There is clearly substantial, immediate, and irreparable harm to this young boy if the injunction were not granted. Clearly, plaintiffs' position is meritorious. Imposing a

stranger suddenly on this young boy, particularly in this manner, is dangerous. Equities fall clearly on plaintiffs' side. In entering this injunction, the court is aware of defendant's claim that he is the boy's father. The order does not preclude defendant from initiating the appropriate legal procedure to seek such a determination if he chooses. Unless and until that happens, he is prohibited from contacting plaintiffs and the family.