**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0308-22

JAMIE BAUX-JOHNSON,

     Plaintiff-Appellant,

v.

NORKIA HOME
IMPROVEMENTS, LLC,
a New Jersey Limited
Liability Company, and
ANCIL MILLAR,

     Defendants,

and

LISA MILLAR,

     Defendant-Respondent.

_____

Argued May 21, 2024 – Decided October 23, 2024

Before Judges DeAlmeida and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-6620-17.

William A. Friedman argued the cause for appellant (Gaeta Law Firm, LLC, attorneys; Anthony N. Gaeta and William A. Friedman, on the briefs).

Matthew M. Fredericks argued the cause for respondent.

The opinion of the court was delivered by

DeALMEIDA, J.A.D.

Plaintiff Jamie Baux-Johnson appeals from three orders of the Law Division: (1) a December 6, 2019 order vacating a final default judgment against defendant Lisa Millar; (2) an April 9, 2020 order denying plaintiff's motion for reconsideration of the December 6, 2019 order; and (3) an August 24, 2022 order dismissing the complaint against Lisa with prejudice.[1]  We affirm the December 6, 2019, and April 9, 2020 orders, reverse the August 24, 2022 order, and remand.

I.

Plaintiff alleges the following.  In January 2016, she began to interview and procure estimates from home improvement contractors for the construction of a deck and other improvements at her home.  Defendant Ancil Millar responded to an inquiry by plaintiff and held himself out as an owner of

---

[1] Because two defendants share a surname, we refer to them by their first names. No disrespect is intended.

A-0308-22

defendant Norkia Home Improvements, LLC (Norkia).  Plaintiff saw statements on Norkia's website regarding, among other things, the quality, promptness, and staffing of home improvement projects by that entity.

While performing due diligence on Norkia, plaintiff also noticed a negative review on the company's website.  When questioned, Ancil claimed the negative review was an aberration and pointed plaintiff to a glowing, five-star review from "Lisa C." on yelp.com dated November 3, 2016.  Unbeknownst to plaintiff, "Lisa C." was Lisa, whose full name is Lisa Clovey Millar.  At the time of the posting, Lisa was the founder, Chief Executive Officer (CEO), registered agent, and, apparently, part owner of Norkia.

Lisa obtained a divorce from Ancil in September 2015, more than a year before she posted the yelp.com review.  The judgment of divorce (JOD) stated that Ancil "shall retain full ownership of Norkia . . . . [, Lisa] waives any claim, right, title or interest to Norkia[, and Ancil] shall hold [Lisa] harmless from any and all liabilities . . . in connection with Norkia . . . ."  The record, however, contains no evidence Lisa transferred her ownership interest in Norkia to Ancil after entry of the JOD or removed herself as CEO or registered agent of the entity.  To the contrary, filings with the State after entry of the JOD list Lisa as

3

the CEO of Norkia. Plaintiff also claims to have evidence that Lisa remained as a signatory on Norkia's financial accounts after entry of the JOD.

In the yelp.com review, Lisa did not identify herself as an officer, registered agent, and owner of Norkia or as Ancil's former spouse. Instead, she portrayed herself as a customer for whom Norkia was "an inexpensive godsend" she used for improvements on what she described as "my home." Lisa stated that Norkia displayed workmanship that is "always compliment[ed]" by "[a]nyone visiting my home" and that she "highly recommend[ed] this company and will use them in the future." Apparently, the home to which she was referring was the West Orange marital residence she shared and co-owned with Ancil that also serves as the principal place of business and mailing address of Norkia. Although the JOD directed that the marital home be sold, the Millars did not comply with that order. In addition, Ancil lived with Lisa at the marital home until 2018. A photograph of Lisa accompanied the review.

In March 2017, after further discussions with Ancil, plaintiff entered into two contracts with Norkia for home improvements: the first in which she agreed to pay $250,600 for the procurement of materials and the construction of the deck and related improvements; the second in which she agreed to pay $17,500 for the purchase and installation of replacement glass sliding doors. As part of

4

the deck project, plaintiff agreed to make an upfront deposit of $125,300, of which $83,000 was to be used for materials for the deck.

According to plaintiff, after she tendered these funds and paid the second contract in full, Norkia failed properly to frame and install the glass sliding doors, resulting in a total loss of the value of that work. In addition, Norkia removed the existing deck and began excavation work. Plaintiff alleges Norkia negligently performed the demolition work, severely damaging her backyard and rendering it unusable. Ancil thereafter demanded additional funds, which plaintiff refused to provide, citing the substantial deposit she had made toward the deck contract and the fact that no materials had been delivered to the job site. When plaintiff demanded an explanation from Ancil, he and Norkia left the job site and effectively ceased all communications with her. Defendants did not return plaintiff's deposit.

Plaintiff made an unannounced visit to Norkia's principal place of business, which she discovered to be Lisa and Ancil's home. Lisa met plaintiff at the door and told her that Ancil was not at home. She did not tell plaintiff she was Norkia's CEO, registered agent, and owner. Lisa directed plaintiff to call Norkia's business phone to speak with Ancil. Plaintiff later discovered Norkia had several complaints of embezzlement of its customers' deposits lodged

5

against it with the Better Business Bureau, as well as a theft accusation posted by a customer on Angie's List.

On September 17, 2017, plaintiff filed a complaint in the Law Division against Norkia, Ancil, and Lisa. She alleged: (1) violation of the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -210, and related regulations; (2) violation of the Contractor's Registration Act, N.J.S.A. 56:8-136 to -152, and related regulations; (3) unconscionable commercial practices; (4) misrepresentation; (5) false advertising; (6) common law fraud; (7) conversion/embezzlement; (8) breach of contract; (9) unjust enrichment; and (10) Ancil and Lisa's personal liability for Norkia's statutory and regulatory violations. She sought damages, punitive damages, an accounting, imposition of a constructive trust over the funds she gave to Norkia, appointment of a receiver for Norkia, and attorney's fees. The complaint identifies statements on Norkia's website plaintiff alleges to be misrepresentations on which she relied. Although Lisa's yelp.com review is not mentioned in the complaint, a copy of the review is attached thereto.[2]

_____

[2] At the time plaintiff filed the complaint, she was not aware "Lisa C." was Lisa. Plaintiff realized Lisa submitted the yelp.com review when, after she filed the complaint, she compared Lisa's Facebook profile picture with the picture accompanying the review. Plaintiff did not, however, amend the complaint to identify the yelp.com review as a misrepresentation on which she relied when entering the contracts.

6

A process server attempted to serve the summons and complaint on defendants at the Millars's residence and Norkia's principal place of business on five occasions: September 28, 2017, at 5:06 p.m.; September 28, 2017, at 7:25 p.m.; September 29, 2017, at 12:13 p.m.; September 29, 2017, at 7:46 p.m.; and October 4, 2017, at 6:13 p.m. In an affidavit, the process server noted that when service was attempted "there [were] cars in the driveway," and "the service doorbell ha[d] a camera [but] [n]o one w[ould] answer the door." He stated he felt defendants were evading service.

On October 17, 2017, plaintiff served defendants with the summons and complaint by way of simultaneous mailing via certified mail, return receipt requested, and regular mail pursuant to Rule 4:4-3(a). Plaintiff took this step because she believed "personal service cannot be effected" on defendants pursuant to Rule 4:4-4(a) "after a reasonable and good faith attempt," see R. 4:4-3(a), based on: (1) the process server's affidavit establishing defendants had evaded personal service five times; (2) plaintiff having seen Lisa at the residence a few months earlier; (3) Norkia's construction vehicle being parked at the residence when service was attempted; and (4) defendants' non-work vehicles

7

being parked at the residence when service was attempted. The postal service returned as "unclaimed" the certified mail. The regular mail was not returned.[3]

On December 5, 2017, plaintiff moved for entry of default against defendants. The motion was served on defendants by certified mail, return receipt requested, and regular mail. An individual at defendants' residence signed the three return receipt cards for the motion. Defendants did not respond to the motion.

On February 2, 2018, the court entered default against defendants and scheduled the matter for a proof hearing. Plaintiff served notice of the proof hearing on defendants, as well as two notices of adjournments of the hearing.

Defendants failed to appear at the proof hearing. At the hearing, the court found all defendants had been served with the summons and complaint, failed to answer the complaint, and received notice of the proof hearing. Following presentation of plaintiff's proofs, the court found defendants committed fraud against plaintiff by making representations with knowledge of their falsity, deliberately for the purpose of deceiving plaintiff, who justifiably relied on the representations, proximately causing her damages. Specifically, the court found

---

[3] In a post-argument submission, plaintiff filed proof that a week after she effected service on defendants via mailing, Lisa was removed as CEO of Norkia in a filing with the Department of Treasury.

A-0308-22

that Lisa "obviously posted [the yelp.com review] because there were unfavorable reviews on [y]elp and 'it[']s totally fraudulent what she posted. She did not say that she was the [p]rincipal of Norkia when she posted this." The court also found that the corporate veil should be pierced because Ancil and Lisa individually defrauded plaintiff on behalf of Norkia.

On April 3, 2018, the court entered a default judgment of $941,124.91 against defendants. The judgment was comprised of $143,700 in compensatory damages for funds defendants fraudulently obtained from plaintiff, $96,932.69 for the difference between the price of the Norkia contracts and the contracts plaintiff executed with other contractors to complete the work defendants failed to complete, and $25,000 for plaintiff's loss of the use of her backyard, all of which were trebled pursuant to N.J.S.A. 56:8-19, for a total of $796,897.77. In addition, the court awarded $100,000 in punitive damages, $39,475 in attorney's fees, $3,765.31 in prejudgment interest, and $986.83 in costs.

Plaintiff subsequently began efforts to collect on the judgment. After the first successful turnover of funds from Norkia's bank account, defendants moved to vacate the judgment pursuant to Rule 4:50-1(a). They argued they could establish excusable neglect for not answering the complaint and a meritorious defense to plaintiff's claims. In support of the motion, Lisa submitted a

certification prepared by Adam M. Brown, who identified himself as Lisa's attorney at the top of the certification.  In the certification, Lisa states that "I have only recently been advised by my counsel that I am a party to this lawsuit" and claims she "was never served with papers in this matter."  She certified that she had no involvement in Norkia's business after entry of the JOD.

On December 14, 2018, the trial court issued an oral opinion denying the motion.  The court found Lisa "just ignored all of the" notices plaintiff sent to her residence, has "no excuse," and "can't even tell us why she ignored all the notices at her house."  Noting Lisa's failure to answer the complaint "just makes no sense," the court found she failed to establish excusable neglect.  The court also found Lisa had not "provided any basis for a defense in this case."  The court also found Ancil "just stopped doing work and there's no effort shown in any of the documents that [Ancil] intended to continue working.  It just shows the contrary that he took the money and had no intention of performing the work."  A December 17, 2018 order memorialized the trial court's decision.

On October 25, 2019, Lisa moved to vacate the judgment against her individually pursuant to Rule 4:50-1(d).  She argued the judgment was void for lack of personal jurisdiction.  Lisa grounded her argument on Rule 4:4-4(c), which provides that "default shall not be entered against a defendant who fails

to answer or appear" in response to a complaint served by optional mail service pursuant to that rule. She further argued a court order was required before plaintiff could resort to service by certified mail, return receipt requested.

In a certification accompanying the motion, Lisa stated that after the divorce she had no interest or involvement in Norkia and the JOD provided Ancil will hold her harmless for any liabilities arising from that entity. Lisa claimed she was not aware she remained an officer of Norkia after entry of the JOD. She admitted, however, that she made deposits into Norkia's bank account after entry of the JOD, and that she and Ancil remained in the marital home, which they continue to own jointly, until Ancil left in April or May 2018. Lisa acknowledged her home continues to be the principal place of business and mailing address for Norkia. Lisa conceded she "was aware of this lawsuit, but [did] not recall ever seeing the complaint or being personally served or receiving a summons and complaint by mail." She claimed she was not aware she was being personally sued. Lisa certified Ancil hired an attorney and told her he "was taking care of the lawsuit." She claimed Ancil forged her signature on responses to plaintiff's post-judgment information subpoena.

Lisa also certified she did not retain Brown, the attorney who filed the first motion to vacate the judgment. According to Lisa, she did not authorize

Brown to represent her and never met or spoke with him. Lisa claimed she signed the certification filed in support of the first motion to vacate the judgment, which identifies Brown as her attorney, without reading it. Thus, Lisa argues, the court should not consider her to have failed to raise the Rule 4:4-4(c) argument in the first motion to vacate.[4]

On November 22, 2019, the trial court issued an oral opinion granting Lisa's motion. Relying on our holding in Arrow Mfg. Co., Inc. v. Levinson, 231 N.J. Super. 527 (App. Div. 1989), the trial court reasoned that:

> Here, as in Arrow, . . . the facts supporting a finding that Lisa . . . deliberately evaded service o[f] process [of] the complaint and ignored subsequent notices regarding this litigation [resulted in] default judgment against [her that] has the . . . effect of piercing the corporate veil and entering a judgment against [Lisa] individually for claims against Norkia.
>
> The complaint did not contain specific allegations as to [Lisa] in the same way as it did against [Ancil]. Now, there was a previous motion to vacate the default judgment in this matter. That motion was filed as a global motion for all defendants and that motion was denied. The [c]ourt finds that Lisa . . . does have a basis to vacate the default judgment in this matter because Lisa . . . was divorced from [Ancil] and it's believable

---

[4] The day after Lisa filed her motion, Brown filed a motion to be relieved as Lisa's counsel. He certified he was retained by all defendants, who failed to pay their fees and cut off communications with him, making his further representation of defendants impossible. On May 10, 2019, the court granted Brown's motion.

A-0308-22

that she wasn't served and it's believable that she didn't receive any of the notices and that she was relying upon [Ancil] to take care of this because [Ancil] was the contractor on the job.

Having said that, the [c]ourt finds that there is a basis to vacate the default judgment and there is a meritorious defense . . . on behalf of Lisa . . . only.

A December 6, 2019 order memorialized the trial court's decision.[5]

Plaintiff thereafter moved for reconsideration of the December 6, 2019 order. On April 9, 2020, the court entered an order denying the motion. In a written statement of reasons, the court stated:

Reconsideration is Denied. There was not proper service of the complaint on Lisa . . . pursuant to [Rule] 4:4-4(c). Furthermore[,] there was no motion for substituted service.

In the prior motion [] that was denied on 12/[1]7/18 it was never argued that the judgment was void because there was not proper service and no motion for substituted service.

---

[5] On January 6, 2020, Lisa's second attorney moved to be relieved as her counsel. In support of his motion, the attorney certified that Lisa had asked to come to his office to speak with him in person and "[b]ased upon statements made to me by Lisa . . . in my office, I can no longer continue to represent her without violating several Rules of Professional Conduct, as well as my own personal ethical standards. (Were I to enumerate any of those rules, that in and of itself might constitute a violation and also place this [c]ourt in a difficult situation)." On January 24, 2020, the trial court entered an order, over plaintiff's objection, relieving Lisa's second counsel.

When the argument was finally made the court had no choice but to vacate the judgment against Lisa . . . because [Rule] 4:4-4(c) states that default may not be entered.

Lisa thereafter filed an answer. Following discovery, the matter was scheduled for trial.

After the jury was seated, Lisa moved to dismiss the complaint based on plaintiff's failure to plead fraud against Lisa with particularity. She argued the complaint does not allege she made a misrepresentation she knew to be false and upon which she intended plaintiff to rely. In addition, she alleged the complaint makes no allegation identifying any statement by Lisa to plaintiff and notes that while the yelp.com review was attached to the complaint, plaintiff did not allege she read or relied on the review before entering into the contracts with Norkia. Lisa also argued no allegations in the complaint relating to statements made, or action taken, by Norkia or Ancil could be attributable to her, given her separation from any involvement in Norkia after entry of the JOD.

Plaintiff opposed the motion. She argued that because the yelp.com review was attached to the complaint, referenced in her opposition to Lisa's first motion to vacate the default judgment, mentioned during non-binding arbitration, included in plaintiff's pretrial materials circulated six months prior to trial, and the subject of a stipulation by Lisa's counsel agreeing that it was

14

admissible at trial, Lisa was on notice plaintiff's fraud claim against her was based on the review.

On August 23, 2022, the court issued an oral opinion granting Lisa's motion. The court found in light of the JOD, Lisa no longer was an owner or officer of Norkia after September 2015 and any allegations against Norkia or Ancil could not be attributable to her. In addition, the court found the complaint contained "no specific[] allegations . . . with regard to a representation made by [Lisa] to the plaintiff knowing that in fact it was false with the intent to deceive . . . ." Thus, the court found, the complaint does not specify with particularity allegations satisfying the elements of a cause of action under either the CFA or common law fraud against Lisa. On August 24, 2022, the court entered an order dismissing the complaint against Lisa with prejudice.

This appeal followed. Plaintiff argues the trial court's orders vacating the default judgment were based on a misinterpretation of the rules concerning service of process and are not otherwise supported by the record. In the alternative, plaintiff argues that if vacating the default judgment was proper, the trial court erred when it dismissed the complaint against Lisa because it: (1) erroneously assumed Lisa was no longer the CEO, registered agent, and owner of Norkia, or involved Norkia's business, merely by virtue of the JOD; (2)

15

erroneously found the complaint failed to allege with particularity the misrepresentation plaintiff attributed to Lisa; (3) did not permit plaintiff to introduce the yelp.com review as evidence at trial and thereafter amend her complaint to conform with the evidence; (4) erroneously assumed plaintiff could not call Lisa as a witness at trial to prove the falsity of the yelp.com review, as well as her continued involvement with Norkia after entry of the JOD; and (5) did not extend the discovery period to permit Lisa, if truly surprised by plaintiff's intended reliance on the yelp.com review, to propound additional discovery concerning the yelp.com review.

II.

A.    The December 6, 2019, and April 9, 2020 Orders
       Vacating Default Judgment Against Lisa.

Rule 4:50-1 "is designed to reconcile the strong interests in finality of judgments and judicial efficiency with the equitable notion that courts should have authority to avoid an unjust result in any given case." Manning Eng'g, Inc. v. Hudson Cnty. Park Comm'n, 74 N.J. 113, 120 (1977). To balance these goals, "[a] court should view 'the opening of default judgments . . . with great liberality,' and should tolerate 'every reasonable ground for indulgence . . . to the end that a just result is reached.'" Mancini v. EDS ex rel. N.J. Auto. Full Ins. Underwriting Ass'n, 132 N.J. 330, 334 (1993) (alterations in original)

(quoting <u>Marder v. Realty Constr. Co.</u>, 84 N.J. Super. 313, 319 (App. Div.), <u>aff'd</u>, 43 N.J. 508 (1964)).

The movant bears the burden of demonstrating a right to relief. <u>Jameson v. Great Atl. & Pac. Tea Co.</u>, 363 N.J. Super. 419, 425-26 (App. Div. 2003). All doubts, however, shall be resolved in favor of the party seeking relief. <u>Mancini</u>, 132 N.J. at 334. Equitable principles should influence a court's decision to vacate a default judgment. <u>Hous. Auth. v. Little</u>, 135 N.J. 274, 283 (1994); <u>Pro. Stone, Stucco & Siding Applicators, Inc. v. Carter</u>, 409 N.J. Super. 64, 68 (App. Div. 2009).

We review a trial court's decision to deny a motion to vacate a default judgment under <u>Rule</u> 4:50-1 for abuse of discretion. <u>Deutsche Bank Nat'l Tr. Co. v. Russo</u>, 429 N.J. Super. 91, 98 (App. Div. 2012). We will not reverse the trial court's decision unless it is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." <u>US Bank Nat'l Ass'n v. Guillaume</u>, 209 N.J. 449, 467 (2012) (quoting <u>Iliadis v. Wal-Mart Stores, Inc.</u>, 191 N.J. 88, 123 (2007)). Indeed, "[t]he trial court's determination under [<u>Rule</u> 4:50-1] warrants substantial deference," and the abuse of discretion must be "clear" to warrant reversal. <u>Ibid.</u>

17

Rule 4:50-1 provides, in relevant part: "On motion, with briefs, and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment or order for the following reasons: (a) . . . excusable neglect . . . ." Under subsection (a) of the Rule, a "defendant seeking to set aside a default judgment must establish that his failure to answer was due to excusable neglect and that he has a meritorious defense." Deutsche Bank, 429 N.J. Super. at 98 (quoting Goldhaber v. Kohlenberg, 395 N.J. Super. 380, 391 (App. Div. 2007)). Excusable neglect refers to a default that is "attributable to an honest mistake that is compatible with due diligence or reasonable prudence." Ibid. (quoting Guillame, 209 N.J. at 468). The type of mistake warranting relief under the Rule is one that the party could not have protected themselves against. DEG, LLC v. Twp. of Fairfield, 198 N.J. 242, 263 (2009).

Plaintiff argues the trial court vacated the default judgment against Lisa based on its erroneous interpretation of the court rules regarding service of process. We agree. The primary methods for effecting service of process of a summons and complaint and obtaining in personam jurisdiction over a defendant in this State are set forth in Rule 4:4-4(a)(1) to (9). Plaintiff attempted to serve Lisa "by causing the summons and complaint to be personally served" on her "by delivering a copy" of those documents "to the individual personally, or by

leaving a copy thereof at the individual's dwelling place or usual place of abode with a competent member of the household . . . ."  R. 4:4-4(a)(1).  A process server went to Lisa's residence five times over a number of days in an attempt to deliver the summons and complaint to her or a competent member of her household.  Although Norkia's commercial vehicle and the residents' personal vehicles were in the driveway of the home and a camera was operating at the front door, the residents of the house did not answer the door.  The trial court's finding this constituted evasion of service by Lisa is supported by the record.

When a defendant evades service attempts by the methods allowed in Rule 4:4-4(a)(1) to (9), the Rule provides an additional method of effecting service: "The foregoing subparagraphs (a)(1) through (a)(9) notwithstanding, in personam jurisdiction may be obtained by mail under the circumstances and in the manner provided by R. 4:4-3."  R. 4:4-4(a).

Rule 4:4-3(a) provides, in relevant part:

> If personal service cannot be effected after a reasonable and good faith attempt, which shall be described with specificity in the proof of service required by R. 4:4-7, service may be made by mailing a copy of the summons and complaint by registered or certified mail, return receipt requested, to the usual place of abode of the defendant . . . .  If the addressee refuses to claim or accept delivery of registered or certified mail, service may be made by ordinary mail addressed to the defendant's usual place of abode.  The party making

19 A-0308-22

service may, at the party's option, make service simultaneously by registered or certified mail and ordinary mail, and if the addressee refuses to claim or accept delivery of registered mail and if the ordinary mailing is not returned, the simultaneous mailing shall constitute effective service.

[R. 4:4-3(a).]

Nothing in Rule 4:4-3(a) requires a court order to permit service of process by this method. The only prerequisite to effecting service pursuant to the method provided in Rule 4:4-3(a) is that a reasonable and good faith attempt to effect service by the methods provided in Rule 4:4-4(a)(1) through (9) was made and described in an affidavit of service. In addition, Rule 4:4-4(b)(3) provides, "[i]f service can be made by any of the modes provided by this rule, no court order shall be necessary." Service pursuant to Rule 4:4-3(a) is permitted by Rule 4:4-4(a) "under the circumstances and in the manner provided by" Rule 4:4-3(a). Thus, no court order is necessary to effect service via Rule 4:4-3(a) where the circumstances set forth in the rule – a reasonable and good faith attempt to effect service under Rule 4:4-4(a)(1) through (9) was made but unsuccessful – has been met. That is the case here.

A court order is required only "[i]f service cannot be made by any of the modes provided by" Rule 4:4-4. R. 4:4-4(b)(3). In those circumstances, a court

20

may permit substituted service by a method not provided in <u>Rule</u> 4:4-4(a)(1) through (9).  As the Chancery Division explained:

> As a preliminary matter, a plaintiff must serve the complaint and summons on the defendant personally. <u>R.</u> 4:4-4(a).  If, however, a plaintiff's reasonable, good-faith attempt to effectuate personal service proves unsuccessful, the plaintiff may then attempt to effectuate service using the secondary methods prescribed in the court rules.  <u>R.</u> 4:4-3(b).  The <u>Rules</u> also provide that, as a tertiary and last resort, "If service cannot be made by any of the modes provided by this rule, any defendant may be served as provided by court order, consistent with due process of law."  <u>R.</u> 4:4-4(b)(3).
>
> [<u>K.A. v. J.L.</u>, 450 N.J. Super. 247, 252 (Ch. Div. 2016) (permitting by court order service of process via Facebook where attempts to serve defendant by mail proved unsuccessful because mail was not deliverable to only address known to plaintiff).]

<u>Rule</u> 4:4-4(b)(3) "is evidently intended to fill a gap in the rules by permitting the court to direct service to be made in a particular manner where service cannot be effected pursuant to the other provisions of this rule; so long as the order is consistent with due process of law."  Pressler & Verniero, <u>Current N.J. Court Rules</u>, cmt. 3.3.1 on <u>R.</u> 4:4-4 (2025).  "The utility of such a provision is significant in circumstances where usual modes of service are either impossible or unduly oppressive upon the plaintiff or where the defendant successfully evades service of process."  <u>Ibid.</u>  Plaintiff did not resort to <u>Rule</u>

4:4-4(b)(3) because she was able to effect service through simultaneous mailings after a reasonable and good-faith effort at service using the methods provided in Rule 4:4-4(a)(1) through (9) was unsuccessful.

Nor did plaintiff employ the "[o]ptional [m]ailed [s]ervice" provided in Rule 4:4-4(c), which does not permit entry of a default if the defendant does not file an answer. That rule provides:

> Where personal service is required to be made pursuant to paragraph (a) of this rule, service, in lieu of personal service, may be made by registered, certified or ordinary mail, provided, however, that such service shall be effective for obtaining in personam jurisdiction only if the defendant answers the complaint or otherwise appears in response thereto, and provided further that default shall not be entered against a defendant who fails to answer or appear in response thereto. This prohibition against entry of default shall not apply to mailed service authorized by any other provision of these rules.
>
> [R. 4:4-4(c).]

This Rule permits a plaintiff to opt for service by mail in lieu of attempting personal service through the methods provided in Rule 4:4-4(a)(1) through (9). If the defendant answers or otherwise responds to the complaint, service has been effectuated. If not, default cannot be entered against the defendant. Citibank, N.A. v. Russo, 334 N.J. Super. 346, 351-52 (App. Div. 2000).

22

Plaintiff did not employ this Rule.  She did not opt to mail the summons and complaint to Lisa in lieu of attempting personal service via the methods provided in Rule 4:4-4(a)(1) through (9).  Instead, as detailed in the process server's affidavit of service, plaintiff attempted to effect personal service on Lisa at her residence five times, but Lisa successfully evaded service.  Plaintiff, therefore, served Lisa via certified and regular mail as permitted by Rule 4:4-3(a), the secondary method of personally serving a defendant who has evaded service.  As expressly stated in Rule 4:4-4(c), the "prohibition against entry of default shall not apply to mailed service authorized by any other provision of these rules."  Because the mailed service employed by plaintiff is permitted by Rule 4:4-3(a), the prohibition against entry of default in Rule 4:4-4(c) does not apply.  It was, therefore, error for the trial court to conclude that the default judgment against Lisa had to be vacated because plaintiff did not properly effect service of process.

The record, however, establishes that the court relied on two bases to vacate the judgment.  The December 6, 2019 order is based on the court's findings that although Lisa deliberately evaded service and ignored subsequent notices regarding this matter, it would be inequitable to maintain a default judgment that had the effect of piercing the corporate veil and entering judgment

23

against her individually for the claims against Norkia. This is so, the court found, because Lisa made a credible argument that in light of the JOD, she no longer had an interest in Norkia after September 2015 and was not involved in the negotiation or performance of plaintiff's contracts. For the same reasons, the court found it was reasonable for Lisa to have relied on Ancil, who had an obligation to hold her harmless for any claims relating to Norkia, to defend Lisa's interests in this matter.

We have carefully considered the record and cannot conclude the trial court mistakenly exercised its discretion by entry of the December 6, 2019 order. The court accepted Lisa's certified statements she was unaware she was named as a defendant in the complaint, reasonably thought the JOD insulated her from liability for any claims relating to Norkia after the divorce, and reasonably believed Ancil had hired counsel and would protect her interests. While Lisa's credibility may be suspect in light of the facially misleading yelp.com review attached to the complaint, we see no basis on which to reverse the trial court's finding Lisa established excusable neglect for failing to answer the complaint.

We also agree with the trial court's conclusion Lisa presented a facially viable defense to the claims alleged against her in the complaint. Plaintiff makes no allegation of direct conduct by Lisa. She is implicated in the complaint only

24

in her capacity as an officer and owner of Norkia.  As noted above, Lisa contends that the JOD insulates her from personal liability for the acts of Norkia and Ancil.  We therefore affirm the December 6, 2019 order.[6]

B.    The August 24, 2022 Order
      Dismissing the Complaint Against Lisa.

We apply a de novo standard of review to a trial court's order dismissing a complaint under Rule 4:6-2(e).  See Stop & Shop Supermarket Co., LLC v. Cnty. of Bergen, 450 N.J. Super. 286, 290 (App. Div. 2017) (quoting Teamsters Loc. 97 v. State, 434 N.J. Super. 393, 413 (App. Div. 2014)).  Under the rule, we owe no deference to the motion judge's conclusions.  Rezem Fam. Assocs., LP v. Borough of Millstone, 423 N.J. Super. 103, 114 (App. Div. 2011).  Our "inquiry is limited to examining the legal sufficiency of the facts alleged on the face of the complaint."  Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (citing Rieder v. Dep't of Transp., 221 N.J. Super. 547, 552 (App. Div. 1987)).  "A pleading should be dismissed if it states no basis for relief and discovery would not provide one."  Rezem Family Assocs., LP, 423

---

[6] Because we affirm the December 6, 2019 order, we also affirm the April 9, 2020 order to the extent that it denied plaintiff's motion for reconsideration of the December 6, 2019 order.  As noted above, we find the trial court mistakenly exercised its discretion when it found, as stated in the April 9, 2020 order, plaintiff failed to effect service of process on Lisa.

A-0308-22

N.J. Super. at 113 (citing <u>Camden Cnty. Energy Recovery Assoc., LP v. N.J. Dep't of Env't Prot.</u>, 320 N.J. Super. 59, 64 (App. Div. 1999), <u>aff'd</u>, 170 N.J. 246 (2001)).

In order to state a claim for common law fraud, a complaint must allege:

> (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.
>
> [<u>State v. Qwest Commc'ns. Int'l, Inc.</u>, 387 N.J. Super. 469, 485 (App. Div. 2006) (quoting <u>Gennari v. Weichert Co. Realtors</u>, 148 N.J. 582, 610 (1997)).]

To state a claim for consumer fraud

> under the CFA, a private litigant must allege specific facts that, if proven, would establish the following: "(1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendant's unlawful conduct and the plaintiff's ascertainable loss."
>
> [<u>Hoffman v. Hampshire Labs, Inc.</u>, 405 N.J. Super. 105, 113 (App. Div. 2009) (quoting <u>Dabush v. Mercedes-Benz U.S., LLC</u>, 378 N.J. Super. 105, 114 (App. Div. 2005) (internal quotations omitted)).]

A CFA claim can be based on "fraud, false pretense, . . . misrepresentation, or the knowing concealment, suppression, or omission of any material fact with

A-0308-22

intent that others rely upon such concealment, suppression or omission . . . ." N.J.S.A. 56:8-2.

Rule 4:5-8(a) requires allegations of misrepresentation and fraud set forth the "particulars of the wrong, with dates and items if necessary . . . insofar as practicable." The Rule applies to consumer fraud claims, as well as common law fraud claims. See Hoffman, 405 N.J. Super. at 112. The complaint must contain allegations of specific facts that allow the factfinder to draw the conclusion the defendant made identified statements that are false, deceptive, and misleading. Id. at 114.

The complaint does not allege Lisa posted the yelp.com review or that plaintiff read the review and relied on its contents. However, the review, which contains Lisa's name and picture, was attached to the complaint. In addition, Lisa was on notice as early as her first motion to vacate the default judgment that plaintiff intended to rely on the yelp.com review as a misrepresentation on which she relied. In opposition to that motion, plaintiff's attorney submitted a certification noting Lisa posted the yelp.com review in which she did not disclose her status as CEO of Norkia during the time plaintiff was negotiating her contracts with the company. Plaintiff also submitted the review in support of her position during non-binding arbitration prior to the trial date, further

putting Lisa on notice plaintiff intended to rely on the review. Finally, plaintiff included the yelp.com review in the exhibits exchanged prior to trial and discussed the review at length in her trial brief.

We note that when plaintiff filed the complaint she was unaware the "Lisa C." who drafted the yelp.com review was an officer of Norkia or that the company operated out of the home she shared with Ancil. It was not until months later after a comparison of the picture on Lisa's Facebook page with the picture accompanying the review that plaintiff realized Lisa was the author of the yelp.com review and that it contained obvious omissions and, arguably, constituted false advertising and fraud under the CFA and common law. We have previously held a plaintiff cannot be expected "to plead the precise culpable conduct" of a defendant alleged to have engaged in fraud that is uncovered in discovery, if the defendant received sufficient notice of the fraudulent acts on which the plaintiff intends to rely. Qwest Commc'ns, 387 N.J. Super. at 485.

We have carefully considered the record and conclude it was error for the trial court to dismiss the common law fraud and CFA claims alleged against Lisa in her individual capacity. Prior to trial, Lisa was sufficiently apprised of plaintiff's intention to rely on the yelp.com review to support her claim that Lisa made a misrepresentation designed to assist Ancil in securing contracts between

28

plaintiff and Norkia. Plaintiff's fraud claims against Lisa individually should have been presented to a jury.

We also conclude the trial court mistakenly exercised its discretion when it dismissed the claims alleging Lisa is individually liable for the statutory, regulatory, and tortious violations of Norkia. As a general rule, the debts, obligations, and liabilities of a limited liability company are not the debts, obligations, and liabilities of its members or managers. N.J.S.A. 42:2C-30(a). Personal liability for a member or manager of a limited liability company can be established only where extraordinary circumstances, such as fraud or injustice, warrant piercing the corporate veil. See State, Dept. of Env't Prot. v. Ventron Corp., 94 N.J. 473, 500 (1983).

Although Lisa claims she was divested of her interest in Norkia by virtue of the JOD, plaintiff alleged facts and identified evidence suggesting Lisa remained involved in the entity's business practices long after the divorce, including at the time plaintiff entered into her contracts with Norkia. Those facts and evidence include, but are not necessarily limited to: (1) Lisa was listed as the CEO of Norkia on documents filed with the State until October 2017, more than two years after entry of the JOD; (2) Lisa was listed on Norkia's business accounts and admits making deposits in those accounts after entry of

29

the JOD; (3) Lisa posted the yelp.com review in November 2016 praising Norkia's work, more than a year after entry of the JOD and at the time Ancil was attempting to convince plaintiff to enter into contracts with Norkia; (4) since entry of the JOD, Norkia has used Lisa's residence as its principal place of business and mailing address; (5) after entry of the JOD, Lisa and Ancil continued to jointly own the marital residence where they resided together until 2018, establishing they did not comply with all of the terms of the JOD; and (6) Lisa's living arrangement and Norkia's operation of its business out of her home suggests Lisa benefitted financially from the funds generated by Norkia, including during the time plaintiff made large payments to Ancil which were not refunded. While we offer no opinion with respect to whether plaintiff will be successful in her attempt to hold Lisa individually liable for the harm plaintiff alleges to have suffered because of the illegal and tortious acts of Norkia, it was error to preclude plaintiff from presenting those claims to a jury.

The December 6, 2019, and April 9, 2020 orders are affirmed. The August 24, 2022 order is reversed and the matter is remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

30                                                                      A-0308-22