**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3225-23

HOBOKEN BARBELL, LLC,
on behalf of itself and those
similarly situated,

     Plaintiff-Appellant,

v.

38 JACKSON, LLC, ANTHONY
NICHOLAS PETRUZZELLI,
135 WASHINGTON STREET,
LLC, GLASS AND VAPOR
HOUSE LLC a/k/a GLASS &
VAPORHOUSE, INC., a/k/a GLASS
AND VAPOR HOUSE, INC., CIGAR
AND TOBACCO WAREHOUSE,
INC., a/k/a THE CIGAR AND
TOBACCO WAREHOUSE, INC.,
ALL-SAFE FIRE SPRINKLER CO.,
INC., UNLMTD REAL ESTATE
GROUP, LLC, RITCO SECURITY
SYSTEMS, INC., THE TAURASI
GROUP, INC., GARY JOSEPH
MEZZATESTA, LOCONTE
MAINTENANCE, LLC,
and ANTHONY LOCONTE,

     Defendants-Respondents,

and

ASLAM PANJWANI,

    Defendant.

_____

Argued September 10, 2025 – Decided September 29, 2025

Before Judges Gooden Brown and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-4450-23.

Yongmoon Kim argued the cause for appellant (Kim Law Firm, LLC, attorneys; Philip D. Stern and Yongmoon Kim, on the briefs).

Purnima D. Ramlakhan argued the cause for respondents 38 Jackson, LLC, 135 Washington Street, LLC, The Taurasi Group, Inc., Anthony Nicholas Petruzzelli, and Gary Joseph Mezzatesta (Leary, Bride, Mergner & Bongiovanni, PA, attorneys; Mark Bongiovanni and Purnima D. Ramlakhan, on the brief).

Anne M. Mohan argued the cause for respondents Glass and Vapor House, LLC, and Cigar and Tobacco Warehouse, Inc. (Riker Danzig, LLP, attorneys; Glenn D. Curving, Anne M. Mohan and Cyan A. Perry, on the brief).

Daniel S. Jahnsen argued the cause for respondent All Safe Fire Sprinkler Co., Inc. (Dorf Nelson & Zauderer, LLP, attorneys; Daniel S. Jahnsen and Judy Taboada, on the brief).

Michael D. Celentano argued the cause for respondent UNLMTD Real Estate Group, LLC (McElroy, Deutsch,

2

Mulvaney & Carpenter, LLP, attorneys; Michael D. Celentano, of counsel and on the brief).

Courtney E. Darmofal argued the cause for respondent Ritco Security Systems, Inc. (Goldberg Segalla, LLP, attorneys; John M. McConnell and Courtney E. Darmofal, on the brief).

Andrew Kristofick argued the cause for respondents Loconte Maintenance, LLC, and Anthony Loconte (Hoagland, Longo, Moran, Dunst & Doukas, LLP, attorneys; Andrew Kristofick, of counsel and on the brief).

PER CURIAM

Plaintiff Hoboken Barbell, LLC appeals from seven Law Division orders collectively dismissing the class action claims it alleged against twelve defendants for damages arising from a fire. We affirm.

I.

On December 20, 2021, a fire destroyed a multi-tenant commercial warehouse on Jackson Street in Hoboken (the property). The fire affected the business operations of numerous tenants, destroyed their property, and resulted in the deaths of two occupants of the building.

Defendants 38 Jackson, LLC (38 Jackson) and 135 Washington Street, LLC (135 Washington) owned the property. Plaintiff alleged The Taurasi Group, Inc. (Taurasi) also had an ownership interest in the property. Taurasi

denied it had an ownership interest, involvement, or affiliation with the property. Defendant Anthony Nicholas Petruzzelli was an owner and manager of 38 Jackson, 135 Washington, and Taurasi. Defendant Gary Joseph Mezzatesta was an owner and manager of 38 Jackson and Taurasi.

At the time of the fire, plaintiff was a tenant at the property. The health club it operated in its leased space was destroyed by the fire. Approximately seventy other tenants also occupied the property at the time of the fire, approximately thirty with leases, the terms of which may have varied. Other tenants occupied the property without a lease.

On December 19, 2023, plaintiff filed a class action complaint in the Law Division on behalf of itself and

> [a]ll persons, entities, tenants, leaseholders, lessors, sublessors, residents, occupants, or owners of any business or personal property located on [the city block of which the property was a part] that (1) experienced fire activity during the December 20, 2021, to December 22, 2021 fires; and (2) who has been harmed or damaged during, or as a result of, those fires.[1]

---

[1] The remainder of the complaint refers only to a fire at the subject property on December 20, 2021. It is not clear if the definition of the class refers to a single fire that began on December 20, 2021, and continued to December 22, 2021, or if more than one fire took place at the property during the two-day span. In addition, although the class definition includes an entire city block, plaintiff has described the class as itself "and all but one of its fellow warehouse tenants," suggesting the proposed class is limited to tenants at the property.

Plaintiff named as defendants: (1) 38 Jackson, 135 Washington, Taurasi, Petruzzelli, and Mezzatesta (collectively the Owner Defendants); (2) Glass and Vapor House, LLC, a/k/a Glass & Vaporhouse, Inc., a/k/a Glass and Vapor House, Inc., and Cigar and Tobacco Warehouse, Inc. (C&TW), a/k/a The Cigar and Tobacco Warehouse, Inc. (collectively the Tenant Defendants); and (3) All Safe Fire Sprinkler Co. (All Safe), UNLMTD Real Estate Group, LLC (UNLMTD), Ritco Security Systems, Inc. (Ritco), Loconte Maintenance, LLC (LM), and Anthony Loconte (collectively the Non-Owner Defendants).[2]

Plaintiff alleged the Owner Defendants were responsible for the operation, maintenance, supervision, and control of the property and had a duty to protect the safety of plaintiff and the other tenants by maintaining operating fire safety systems. Plaintiff alleged the Owner Defendants negligently and carelessly operated or maintained the emergency sprinkler and smoke alarm systems at the property, causing them to be non-operational during the fire. According to the complaint, the non-operational status of the fire safety systems allowed the fire to spread widely before the fire department was notified. Plaintiff alleged that

---

[2] Plaintiff also named Aslam Panjwani, who it alleged to be a principal of C&TW, as a defendant. With plaintiff's consent, the claims against Panjwani were dismissed without prejudice.

 A-3225-23

by the time the fire department arrived on scene, a large portion of the property had been destroyed and the two victims had succumbed to smoke inhalation.

In addition, plaintiff alleged the Tenant Defendants stored merchandise known to spontaneously combust, specifically LED rolling trays, in their leased premises at the property. According to the complaint, the Tenant Defendants stacked the LED rolling trays within eighteen inches of sprinkler heads, despite knowing that doing so would interfere with the operation of the sprinkler system. Plaintiff alleged the Owner Defendants and the Non-Owner Defendants were aware of the improperly stacked LED rolling trays and took no steps to ensure they were moved to mitigate the fire hazard.[3] Plaintiff alleged an LED rolling tray or other object stored in the Tenant Defendants' leased space spontaneously combusted on December 20, 2021, and started the fire.

On behalf of itself and all other similarly situated class members, plaintiff alleged causes of action for: (1) negligence against the Owner Defendants and Non-Owner Defendants; (2) negligence against the Tenant Defendants based on

---

[3] The complaint contains no allegations explaining the relationship of the Non-Owner Defendants to the other defendants, plaintiff, the property, or the tenants. In its motion, UNLMTD asserted it performed off-site financial and administrative tasks, such as administering bank accounts, collecting rent, and paying bills on behalf of the owners of the property and was not required to perform any on-site inspections, maintenance work, or repairs at the property. In its brief, All Safe referred to itself as a fire alarm contractor for the building.

different alleged acts than those alleged against the Owner Defendants and Non-Owner Defendants; (3) violations of the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -210, against the Owner Defendants and Non-Owner Defendants for misrepresenting the state of the property and not revealing the poor quality of its fire suppression and alarm systems, which induced the class members to sign leases and locate their businesses at the property; and (4) breach of contract against the Owner Defendants for failing to provide leased space that was inhabitable and useable for the tenants' stated purposes. No count of the complaint jointly charged all defendants with the same cause of action based on the same alleged acts.

Plaintiff alleged because of defendants' acts it and members of the class suffered damages to their businesses and property, including loss of sales and revenue, ongoing loss of business value, and loss of physical goods, property, and equipment. Plaintiff sought for itself and the class compensatory damages, punitive damages, treble damages under the CFA, equitable relief, and attorney's fees.

At the time plaintiff filed the complaint, two actions arising from the fire were pending in the Law Division: (1) a wrongful death and survivorship action, Estate of Rosemarie Vos, et al. v. 38 Jackson, LLC, et al.; and (2) a property

7

damage action filed by businesses operated in a building adjacent to the property, which was damaged by the fire, New England HVAC Servs., et al. v. 38 Jackson, LLC, et al. There are defendants in those two actions not named in plaintiff's complaint.

Two additional property damage actions arising from the fire were filed in the Law Division after plaintiff filed the complaint: (1) Eagle Language Servs., LLC v. 38 Jackson LLC, et al.; and (2) Glass & Vaporhouse, Inc., et al. v. 38 Jackson, LLC, et al. The latter was filed as a subrogation action by an insurance carrier that indemnified C&TW for property damages caused by the fire. Other tenants also received compensation from their property insurers and some of those insurers have asserted their contractual right to bring subrogation actions to recover those payments.

Defendants filed seven motions seeking dismissal of the class action counts of the complaint pursuant to Rule 4:6-2(e) for failure to state a claim upon which relief can be granted. They argued class certification was not appropriate because plaintiff alleged diverse causes of action against a diverse group of defendants on behalf of diverse class members capable of representing their own interests.

On April 18, 2024, the trial court issued an oral decision granting the motions of all defendants except All Safe and UNLMTD, whose motions were returnable on a later date. The court analyzed the four subsections of Rule 4:32-1(a) and found: (1) as to numerosity, this factor was satisfied because there were "many tenants" affected by the fire. The court, however, made no findings with respect to whether joinder of the proposed class members was "impracticable," as required by Rule 4:32-1(a)(1); (2) as to commonality, plaintiff did not establish common questions of fact underlying the class members' claims, given the diversity of their claims and circumstances; (3) as to typicality, plaintiff's claims were not typical of the claims of the class, as proposed class members suffered various types of damages and two class members died in the fire; and (4) as to adequacy of representation, plaintiff did not establish it will fairly and adequately represent the interests of class members. The court concluded, "I don't find that the common issues held by the class in general outweigh any individual differences in damages and liability claims from the various tenants. All the tenants stand in different positions and have different damage claims."

The court entered five April 18, 2024 orders memorializing its decision dismissing the class action claims with prejudice. Plaintiff's individual claims remain pending.[4]

On June 6, 2024, the court issued an oral decision granting All Safe's and UNLMTD's motions for the same reasons it stated on April 18, 2024. The court entered two June 10, 2024 orders memorializing its decision dismissing the class action claims with prejudice.[5]

This appeal, which is limited to the dismissal of plaintiff's class action claims, followed. See R. 2:2-3(b)(9) (providing that "orders granting or denying as a final matter class certification" are appealable as of right). Plaintiff argues the motion court erred because it failed to read the class action allegations in the complaint in an indulgent manner, as is required by Rule 4:6-2(e), and reached unsupported conclusions with respect to commonality, typicality, and adequacy

---

[4] The court also granted the motions of Ritco, LM, and Loconte to dismiss the CFA and punitive damages claims alleged against them because the complaint contained no allegations of specific acts by those defendants supporting those alleged causes of action. The dismissal was without prejudice to plaintiff filing an amended complaint to include more specific allegations against Ritco, LM, and Loconte with respect to its CFA and punitive damages claims.

[5] The court dismissed the punitive damages claim against UNLMTD with prejudice and dismissed the remaining claims against UNLMTD without prejudice. The court dismissed all the remaining claims against All State without prejudice.

of representation by plaintiff.  In addition, plaintiff argues that even if the class members' damages differ, certification of a class on liability alone – the cause of the fire – would be appropriate.

## II.

We apply a de novo standard of review to a trial court's order dismissing a complaint under Rule 4:6-2(e).  Stop & Shop Supermarket Co., LLC v. Cnty. of Bergen, 450 N.J. Super. 286, 290 (App. Div. 2017) (citing Teamsters Loc. 97 v. State, 434 N.J. Super. 393, 413 (App. Div. 2014)).  Under the rule, we owe no deference to the motion judge's decision.  Rezem Family Assocs., LP v. Borough of Millstone, 423 N.J. Super. 103, 114 (App. Div. 2011).  Our "inquiry is limited to examining the legal sufficiency of the facts alleged on the face of the complaint."  Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (citing Rieder v. Dep't of Transp., 221 N.J. Super. 547, 552 (App. Div. 1987)).  "A pleading should be dismissed if it states no basis for relief and discovery would not provide one."  Rezem, 423 N.J. Super. at 113 (citing Camden Cnty. Energy Recovery Assoc., LP v. N.J. Dep't of Env't. Prot., 320 N.J. Super. 59, 64 (App. Div. 1999), aff'd, 170 N.J. 246 (2001)).

In addition, we review an order denying class certification for an abuse of discretion.  Dugan v. TGI Fridays, Inc., 231 N.J. 24, 50 (2017).  Specifically,

11                                                              A-3225-23

we "must ascertain whether the trial court has followed [the] standards" in Rule 4:32-1 "and properly exercised its discretion in granting or denying class certification." Lee v. Carter-Reed Co., LLC, 203 N.J. 496, 506 (2010). A trial court abuses its discretion when a decision is "made without a rational explication, inexplicably departed from established policies, or rested on an impermissible basis." Est. of Kotsovska by Kotsovska v. Liebman, 221 N.J. 568, 588 (2015) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)). "When examining a trial court's exercise of discretionary authority, we reverse only when the exercise of discretion was 'manifestly unjust' under the circumstances." Newark Morning Ledger Co. v. N.J. Sports & Exposition Auth., 423 N.J. Super. 140, 174 (App. Div. 2011) (quoting Union Cnty. Improvement Auth. v. Artaki, LLC, 392 N.J. Super. 141, 149 (App. Div. 2007)).

"A 'class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."'" Dugan, 231 N.J. at 46 (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 103 (2007)). A class action "furthers numerous practical purposes, including judicial economy, cost-effectiveness, convenience, consistent treatment of class members, protection of defendants from inconsistent obligations, and allocation of litigation costs among numerous, similarly-situated litigants." Ibid. (quoting

Iliadis, 191 N.J. 104). The court "must undertake a 'rigorous analysis' to determine if the Rule's requirements have been satisfied." Iliadis, 191 N.J. at 106-07. If the allegations in the complaint do not lend themselves to class certification, dismissal of the class action allegations is appropriate. Myska v. N.J. Mfrs. Ins. Co., 440 N.J. Super. 458, 477 (App. Div. 2015). When a court denies class certification, the named plaintiff may continue to pursue its individual claims. See Id. at 465.

Four initial requirements, "frequently termed 'numerosity, commonality, typicality[,] and adequacy of representation,'" are set forth in Rule 4:32-1(a). Dugan, 231 N.J. at 47 (quoting Lee, 203 N.J. 519). The Rule provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
>
> [R. 4:32-1(a).]

All four requirements of subsection (a) must be satisfied to maintain a class action. Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 173 (2021).

13

If the plaintiff satisfies each requirement under Rule 4:32-1(a), the motion court must next consider Rule 4:32-1(b). That Rule requires one of three alternatives be satisfied:

> (1)   the prosecution of separate actions by or against individual members of the class would create a risk either of:
>
> (A)   inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for the party opposing the class, or
>
> (B)   adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
>
> (2)   the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
>
> (3)   the court finds the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The factors pertinent to the findings include:
>
> (A)   the interest of members of the class in individually controlling the prosecution or defense of separate actions;

14

(B)    the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C)    the desirability or undesirability in concentrating the litigation of the claims in the particular forum; and

(D)    the difficulties likely to be encountered in the management of a class action.

The party seeking class certification bears the burden of proof in establishing the requirements of Rule 4:32-1.  Myska, 440 N.J. Super. at 475.

Having reviewed the record, we are satisfied the motion court did not misapply its discretion when it granted defendants' motions to dismiss the class allegations under Rule 4:32-1(a).  We address the subsections of the Rule in turn:

A.    Numerosity.

Class actions were "'an invention of equity' that enabled litigation to proceed 'in suits where the number of those interested in the subject of the litigation is so great that their joinder as parties in conformity to the usual rules of procedure is impracticable.'"  Iliadis, 191 N.J. at 103 (quoting Hansberry v. Lee, 311 U.S. 32, 41 (1940)).  Class actions typically involved large numbers of potential claimants.  E.g., Dugan, 231 N.J. at 64 (263,000 class members); Lee, 203 N.J. at 512 (10,000 class members); In re Cadillac V8-6-4 Class Action, 93

N.J. 412, 425 (1983) (7,500 class members); <u>Delgozzo v. Kenny</u>, 266 N.J. Super. 169, 184 (App. Div. 1993) (35,000 class members); <u>Atl. Ambulance Corp. v. Cullum</u>, 451 N.J. Super. 247, 252 (App. Div. 2017) (36,000 class members); <u>Lusky v. Capasso Bros.</u>, 118 N.J. Super. 369, 372 (App. Div. 1972) (7,000 class members).

The motion court found the proposed class consisted of approximately seventy tenants at the property. Although defendants argue the motion court found plaintiff did not satisfy the numerosity requirement, we interpret the motion court's decision as reaching the opposition conclusion. A finding the proposed class was sufficiently numerous is supported by precedent. <u>Baskin</u>, 246 N.J. at 174 (noting federal standard that "[a]s a general rule . . . classes of [twenty] are too small, classes of [twenty to forty] may or may not be big enough depending on the circumstances of each case, and classes of [forty] or more are numerous enough.") (quoting <u>In re Toys "R" Us</u>, 300 F.R.D. 347, 367-68 (C.D. Cal. 2013)).[6]

The motion court, however, did not make a finding with respect to the practicality of joining all members of the proposed class in plaintiff's individual

---

[6] <u>Rule</u> 4:32-1 is modeled after <u>Fed. R. Civ. P.</u> 23, the federal class action rule, and we have consistently relied on precedents interpreting the federal rule as guidance when interpreting <u>Rule</u> 4:32-1. <u>In re Cadillac</u>, 93 N.J. at 424-25.

A-3225-23

action. Rule 4:32-1(a) requires a finding that joinder of proposed class members is "impracticable." "[M]ere conclusory or speculative allegations that joinder is impracticable are not sufficient to satisfy the numerosity requirement . . . ." Liberty Lincoln Mercury v. Ford Mktg. Corp., 149 F.R.D. 65, 74 (D.N.J. 1993). As the Liberty court explained, "[p]racticability of joinder depends on a number of factors, including: the size of the class, ease of identifying members and determining addresses, ease of service on members if joined, geographical dispersion and whether proposed members of the class would be able to pursue remedies on an individual basis." Ibid.

In Liberty, the court found a proposed class of thirty-eight to 123 members was "not so large as to preclude joinder of all potential plaintiffs." Ibid. Because all 123 car dealership potential class members were (1) known and identifiable by name and address, (2) easily subject to service of process, and (3) confined geographically to New Jersey, numerosity was not established. Ibid. See also W. Morris Pediatrics, P.A. v. Henry Schein, Inc., 385 N.J. Super. 581, 599 (Law Div. 2004) ("[J]oinder of all thirty-seven customers is not 'impracticable' because their identity is known, they are all in New Jersey and, thus, can be joined in one suit."); Hannoch Weisman v. Brunetti, 13 N.J. Tax 346, 352 (Tax 1993) (finding class certification unwarranted because "[t]he case before the

17

court involves tenants for a specified period in one garden apartment complex, all readily identifiable from records maintained by the landlord . . . .").

Our review of the record reveals a failure on plaintiff's part to demonstrate that joinder of the proposed class members would be impracticable. As was the case in Hannoch Weisman, all the members of the proposed class were tenants in the same building in New Jersey and are readily identifiable from the records maintained by the landlord. They are, therefore, known to both plaintiff and defendants and there is no indication in the record service on the class members would be difficult. In addition, class members do not number in the thousands, or even the hundreds, and joining them in plaintiff's action would not be impracticable.

B. Commonality.

Commonality depends on whether a "common nucleus of operative facts" controls the outcome of the class members' claims. In re Cadillac, 93 N.J. at 431. "Although all issues need not be identical among all class members, common questions must predominate." Carroll v. Cellco P'ship, 313 N.J. Super. 488, 499 (App. Div. 1998). We agree with the motion court's conclusion that the potential class members' claims differ in significant ways.

For example, plaintiff alleges only negligence claims against the Tenant Defendants based on their storage of materials plaintiff claims started the fire. No other defendants are sued for negligent storage of property, although plaintiff alleges the Owner Defendants and Non-Owner Defendants were aware of the Tenant Defendants' negligent acts and failed to correct them.

In addition, plaintiff alleges the Owner Defendants and Non-Owner Defendants failed to adequately maintain fire suppression systems at the property. Those claims are not alleged against the Tenant Defendants. Plaintiff alleges violations of the CFA against some, but not all, defendants. The same is true for plaintiff's breach of contract claims, which are alleged against only the Owner Defendants and not the Non-Owner Defendants or the Tenant Defendants.

Plaintiff's breach of contract and CFA claims highlight the differences in the alleged factual bases of the claims among the proposed class members. Not all class members had written leases. Some occupied the property at the time of the fire pursuant to letters of intent or with no written agreement. Their breach of contract claims, therefore, will have significantly different factual predicates. In addition, plaintiff did not establish that in those instances in which tenants had leases, the terms of those leases were identical or similar. Plaintiff's CFA

19

claims rely on alleged representations made by the Owner Defendants and Non-Owner Defendants to tenants to entice them to rent space in the warehouse and locate their businesses there. Plaintiff made no showing those alleged representations were identical or similar or made by the same defendants to each class member. In addition, the members of the class are likely to have variable proofs as to their reliance on the alleged representations.

The proposed class members' damages claims also lack commonality. Some tenants have been reimbursed under their insurance policies for the property damages they suffered. Any subrogation claims by their insurers will involve liquidated damages, and the insurance companies are capable of pursuing subrogation claims without class representation. Some tenants, however, may claim they were not fully reimbursed for their losses and may seek damages above what they recouped in insurance proceeds. Other tenants may not have had insurance and will need to individually identify what was stored on the premises and lost in the fire, as well as the value of such property and consequent lost profits. Finally, two of the proposed class members have claims for wrongful death. No other class member was killed in the fire.

We recognize that not all members of a class must have identical claims against identical defendants to warrant class certification. We find, however, it

was within the motion court's discretion to conclude the diversity of claims alleged in the complaint does not satisfy the commonality standard in Rule 4:32-1(a).

C.    Typicality.

Typicality requires the claims asserted by the plaintiff "have the essential characteristics common to the claims of the class." In re Cadillac, 93 N.J. at 425 (quoting 3B Moore's Federal Practice ¶ 23.06-2 (1982)).  "If the class representative's claims arise from the same events, practice, or conduct, and are based on the same legal theory, as those of other class members, the typicality requirement is satisfied." Laufer v. U.S. Life Ins. Co. in City of N.Y., 385 N.J. Super. 172, 18081 (App. Div. 2006) (quoting 5 Moore's Federal Practice ¶ 23.24[2] (3d ed. 1997)).

Plaintiff's claims are substantively different from the claims of many potential class members.  In particular, several class members have received insurance benefits from their carriers on their lost property claims.  Plaintiff, however, has not received such benefits.  Thus, unlike the tenants who have received insurance proceeds, plaintiff's damages are not fixed and liquidated.  In addition, as noted above, some tenants who have received insurance proceeds may claim they have not been fully compensated for their losses, giving them

21

potential claims against their insurers, which would presumably be incorporated into the class action and require different proofs. See Myska, 440 N.J. Super. at 480 (affirming the denial of class certification due to "individualized facts and circumstances between each insurer and its insured . . . ."). Plaintiff also does not have claims similar to the estates of the two tenants killed in the fire.

D.     Adequacy of Representation.

Given the differences in claims asserted by plaintiff and the potential class members, we find no mistaken exercise in discretion in the motion court's conclusion plaintiff did not establish it would adequately represent the class. In assessing the adequacy of representation by the named plaintiff, courts also consider whether the potential class members have individual recourses to represent their own interests. Class actions are appropriate where individual clams "are, in isolation, 'too small . . . to warrant recourse to litigation.'" Iliadis, 191 N.J. at 104 (quoting In re Cadillac, 93 N.J. at 435). "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." Amchem Pros., Inc. v. Windsor, 521 U.S. 591, 617 (1997) (quoting Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (7th Cir. 1997)). Class actions also serve to equalize adversaries, "a purpose that is even

more compelling when the proposed class consists of people with small claims." Little v. Kia Motors Am., Inc., 242 N.J. 557, 581 (2020) (Iliadis, 191 N.J. at 104). Equalization "remedies the incentive problem facing litigants who seek only a small recovery." Muhammad v. Cnty. Bank of Rehobeth Beach, 189 N.J. 1, 17 (2006).

Here, four complaints alleging individual claims arising from the fire independent of plaintiff's complaint have been filed. Those independent actions named defendants not named in plaintiff's complaint. In those instances in which a tenant has received insurance proceeds, insurance carriers, likely represented by competent counsel, will likely be asserting subrogation claims without the need for a class representative. In addition, the damages sought in plaintiff's complaint are not "paltry," but, as plaintiff alleges, the economic damages suffered by the individual class members are significant. This negates the need for a class action to address the economic motivation of the injured parties to file individual suits.

Because we find no error in the motion court's conclusion plaintiff did not satisfy the four subsections of Rule 4:32-1(a), we need not address the factors set forth in Rule 4:32-1(b).

23

To the extent we have not specifically addressed any of plaintiff's remaining claims, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-3225-23